37 P.3d 293 (2001)
STATE of Washington, Respondent,
v.
Douglas Alan GOHL, Appellant.
No. 46467-1-I.
Court of Appeals of Washington, Division 1.
November 5, 2001.
Publication Ordered December 18, 2001.
*294 Cheryl D. Aza, Washington Appellate Project, Seattle, for Appellant.
Ann Marie Summers, King County Prosecutors Office, Seattle, for Respondent.
PER CURIAM.
After hitting Heather Giaudrone and her roommate, Jane Vollant, about the head with a metal bar, Douglas Gohl was charged with two counts of attempted first degree murder, two counts of first degree assault, and one count of first degree burglary. Gohl appeals, arguing that the convictions on both the murder and assault charges constitute double jeopardy; that the trial court erred in imposing consecutive deadly weapon enhancements; and that the evidence was insufficient to prove that Gohl entered the apartment without permission. The State concedes that the attempted murder and assault convictions were based on the same acts and caused the same harm, but argues that the lack of sentences for the assaults avoids any double jeopardy violation.
The State concedes that the trial court erred in imposing consecutive deadly weapon sentence enhancements. Because the assault and attempted murder convictions violated double jeopardy, we vacate the assault convictions and their corresponding deadly weapon enhancements. Because the evidence supports the burglary conviction, we affirm it.

FACTS
Heather Giaudrone and Douglas Gohl dated for about two months in late 1997 and early 1998. On the night of January 28, Gohl came to Giaudrone's apartment. She told him he could not come in because her roommates were sleeping. They went to a park for a while, then returned to Giaudrone's apartment. Gohl asked for a quarter so he could call a friend to come get him. Giaudrone told Gohl to wait outside while she went in to get the quarter. She left the door ajar because she was coming right back. Gohl came inside and asked for a glass of water. Giaudrone brought the water to him and took it into the kitchen when he was done. As she turned around to say goodbye, she was hit hard in the back of the head and screamed for help.
Jane Vollant, Giaudrone's roommate, heard the scream and came out of her room. She saw a man hitting Giaudrone. He came after her, and she ran out the open front door and began to run down the stairs. The man ran after her and pushed her, causing her to fall to the bottom of the stairs. The man came down and hit her hard on the left side of the head. She got up and ran up the stairs of the neighboring building.
Mary Young lived in an apartment in the neighboring building. She heard a female screaming for help and looked out the peephole of her front door. She saw a woman lying in front of the door opposite hers. A man ran up and hit the woman about the face and head between five and ten times, then ran away.

DECISION
1. Double jeopardy
Gohl first argues that his convictions for attempted first degree murder and first degree assault violate his right to be free from double jeopardy. The double jeopardy clauses of the federal and Washington constitutions protect defendants from multiple punishments for the same offense.[1] A court on appeal must determine whether the Legislature intended to allow multiple punishments.[2] In making this determination, Washington courts use the "same evidence" test: offenses are the same for double jeopardy purposes if they are the same in law and in fact.[3] WHERE EACH OFFENSE contains an element that is not included in the other, and proof of one would not necessarily prove the other, they are not the same and there is no *295 double jeopardy violation.[4] This rule controls unless there is a clear indication that the legislature did not intend to impose multiple punishment.[5]
This court has previously considered whether convictions for second degree murder and first degree assault constituted double jeopardy. The court determined that the offenses were the same in fact because they were based on the same act directed at the same victim.[6] The court determined that the offenses were the same in law as well: where the harm is the same for both offenses, it would be inconceivable that the Legislature intended double punishment for both.[7]
This court recently applied the same analysis where a defendant was convicted of assault and attempted murder, concluding that it is unlikely the Legislature intended to punish a single assaultive act as both assault and attempted murder.[8] There is no reason that a single assault should give rise to only one conviction if the victim dies, where the charge would be murder and assault, but two convictions if the victim survives, where attempted murder and assault would be charged.[9]
In this case, the State concedes that the attempted first degree murder and first degree assault convictions were based on the same facts, and that the harm was also the same for both offenses. But the State argues that the presence of both convictions does not violate double jeopardy because the trial court imposed no sentence for the assaults, finding them to encompass the same criminal conduct.[10] This argument contradicts the rule that conviction, and not merely imposition of a sentence, constitutes punishment.[11] The fact of multiple convictions, with the concomitant societal stigma and potential to increase sentence under recidivist statutes for any future offense violated double jeopardy even where, as here, the trial court imposed only one sentence for the two offenses. Because the attempted first degree murder and first degree assault convictions are the same in law and in fact, they constitute double jeopardy. For this reason, we vacate the assault convictions and the corresponding deadly weapon sentence enhancements.
2. Consecutive Sentences for Deadly Weapon
The jury entered special verdicts stating that Gohl was armed with a deadly weapon when he committed the two first degree assaults and the first degree burglary. Gohl argues that the trial court erroneously ordered the deadly weapon sentence enhancements to run consecutive to each other as well as to the underlying offenses. The State concedes that the trial court erred in imposing consecutive deadly weapon enhancements. As set out above, two of the underlying offenses and two of the deadly weapon sentence enhancements are vacated; therefore only one enhancement remains and we need not consider this argument.
3. Sufficiency of the Evidence
Next, Gohl argues that the evidence does not support his conviction of first degree burglary because it does not show unlawful entry or remaining in the apartment. When reviewing a claim of insufficiency, a court on appeal must determine whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt.[12] A challenge to the sufficiency of the evidence admits *296 the truth of the State's evidence and all reasonable inferences therefrom.[13]
An individual is guilty of first degree burglary when he enters or remains unlawfully in a building with intent to commit a crime therein and, either inside or while fleeing, was armed with a deadly weapon or assaulted someone.[14] Entry is unlawful if made without invitation, license, or privilege.[15] Limitation or revocation of such a license may be inferred from the particular facts and circumstances of a case.[16]
In this case, the facts show that Gohl had no license to be in the apartment. Giaudrone testified that she told Gohl numerous times during the evening that he could not come inside because her roommates were asleep. She stated that she never invited Gohl in and told him to stay outside while she went in to get the quarter for his telephone call. Once he was inside, she did not ask him to come further in to the apartment or sit down; she merely gave him some water at his request, thinking he would drink it and leave. A reasonable person would not conclude that Giaudrone extended an invitation or granted a license to Gohl to be in the apartment.
Even if a license existed, it was limited to the specific purpose of getting a quarter and some water. In Collins, two homeowners invited a stranger who appeared lost to enter their home to make a telephone call. He dragged them to another room and assaulted them. The court held that the invitation or license extended to him was limited to a specific area and purpose, and that it was impliedly revoked when he exceeded it. The evidence in this case shows that Giaudrone screamed for help, Vallot attempted to escape and to call help, and both women suffered severe injuries. Gohl attempted to prevent their calls for help, and subsequently fled the scene. This evidence gives rise to an inference that Giaudrone revoked any invitation or license she may have given earlier, and that Gohl exceeded any such license by assaulting Giaudrone and Vollant. There is ample evidence supporting the first degree burglary conviction.

CONCLUSION
Because the evidence supports the first degree burglary conviction, we affirm it. Because the convictions on both the attempted first degree murder and first degree assault charges violate the double jeopardy prohibition, we vacate the first degree assault convictions and the corresponding deadly weapon sentence enhancements and remand for resentencing.
NOTES
[1] State v. Calle, 125 Wash.2d 769, 771, 888 P.2d 155 (1995).
[2] State v. Read, 100 Wash.App. 776, 790, 998 P.2d 897 (2000).
[3] Calle, 125 Wash.2d at 777, 888 P.2d 155.
[4] Calle, 125 Wash.2d at 777, 888 P.2d 155.
[5] Calle, 125 Wash.2d at 779-80, 888 P.2d 155; Read, 100 Wash.App. at 792, 998 P.2d 897.
[6] Read, 100 Wash.App. at 791, 998 P.2d 897.
[7] Read, 100 Wash.App. at 792, 998 P.2d 897.
[8] State v. Valentine, 108 Wash.App. 24, 29 P.3d 42, 44 (2001).
[9] Valentine, 29 P.3d at 44.
[10] RCW 9.94A.400(1)(a).
[11] Ball v. United States, 470 U.S. 856, 861, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985); In re Davis, 142 Wash.2d 165, 171, 12 P.3d 603 (2000).
[12] State v. Green, 94 Wash.2d 216, 221, 616 P.2d 628 (1980).
[13] State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992).
[14] RCW 9A.52.020.
[15] State v. Grimes, 92 Wash.App. 973, 978, 966 P.2d 394 (1998).
[16] State v. Collins, 110 Wash.2d 253, 261, 751 P.2d 837 (1988).