123 P.3d 528 (2005)
130 Wash.App. 450
STATE of Washington, Respondent,
v.
Brian Zane WOMAC, Appellant.
No. 31557-2-II.
Court of Appeals of Washington, Division 2.
November 22, 2005.
*529 Rebecca Wold Bouchey, Attorney at Law, Mercer Island, WA, for Appellant.
John Michael Sheeran, Attorney at Law, Tacoma, WA, for Respondent.
MORGAN, J.P.T.[1]
¶ 1 Brian Zane Womac appeals a jury verdict and sentence for homicide of a child by abuse (Count I), and jury verdicts for second degree felony murder (Count II) and first degree assault (Count III). He argues that the trial court violated ER 404(b), Blakely v. Washington,[2] and the double jeopardy clause. We affirm the verdict on Count I, remand for re-sentencing on that count within the standard range, and, if Womac so requests after remand, direct the trial court to conditionally dismiss Counts II and III.
¶ 2 Womac has fathered at least three sons, Brandon, Zachary, and Anthony.[3] Brandon's mother is Kimberly Womac, Womac's first wife; Zachary's mother is Michelle Womac, Womac's second wife; and Anthony's mother is Christa Owings, Womac's girlfriend at the times pertinent here. Anthony was born on July 8, 2002.
¶ 3 In late 2002, Womac, Owings, and Anthony were living in Tacoma. Owings had a job in Olympia, and Womac cared for Anthony while Owings was at work.
¶ 4 On December 1, Womac drove Owings to and from her work in Olympia, taking Anthony both ways. In the morning, Anthony was normal and healthy. In the afternoon, Anthony was limp and pale, and his eyes were rolled back in his head. Womac and Owings took him to the nearest emergency room, where Dr. Steven West ordered a CT scan. While waiting for the results, Dr. West asked Womac what had happened, and Womac said Anthony had fallen "out of his arms onto the floor" and lost consciousness.[4] The scan showed skull fractures and a subdural hematoma which, according to later *530 medical testimony, were not consistent with a short fall to the floor. Anthony was airlifted to a Seattle trauma center, where he died a few hours later.
¶ 5 On December 5, 2002, the State filed an information which, as later amended, alleged homicide by abuse[5] (Count I), second degree felony murder[6] with criminal mistreatment in the first or second degree as the predicate offense[7] (Count II), and first degree assault of a child (Count III).[8]
¶ 6 On January 7, 2004, the court held a pretrial hearing to determine whether the State could admit evidence of uncharged acts under ER 404(b). The parties and the court understood that the central issue at trial would be whether Anthony had "suffered fatal injuries as the result of an intentional assault perpetrated by the defendant, or by an accidental short-fall to a carpeted floor."[9] Over Womac's objection, the trial court admitted the following evidence:
1. Evidence that the defendant spanked his son Brandon Womac on a number of occasions when Brandon was six to eight weeks old (1990) and that each time Kim Womac told the defendant that Brandon was too young to be spanked.
2. Evidence that when Brandon was approximately 18-months-old (1991) the defendant and Kim Womac took Brandon on a camping trip. The family slept in a tent. Brandon was fussy and crying during the night, which caused the defendant to reach over several times in the dark and hit Brandon. Defendant later removed Brandon from the tent.
3. Evidence that the defendant struck his son Zachary Womac and left a 4" × 4" bruise on Zachary's thigh in April 2001 when Zachary was 3-years-old.[[10]]
The court reasoned that the evidence was "relevant to prove the defendant's intent in striking [Anthony] and the absence of mistake or accident in the defendant's act of striking [Anthony]"; that "[t]here were no eyewitnesses ... other than the defendant"; and that probative value was not substantially outweighed by the danger of unfair prejudice within the meaning of ER 403.[11]
¶ 7 On January 14, 2004, the court began a jury trial. The State called Owings, Kimberly, Michelle, Dr. West, and a number of other witnesses. Dr. West opined that Anthony's injuries were caused by substantial force and were not consistent with a short fall to the floor. Likewise, Dr. Katherine Raven, a King County Medical Examiner, opined that Anthony's injuries could not have been caused by a fall of approximately three feet to a carpeted surface. Womac rested at the end of the State's case in chief, and the jury found him guilty as charged.
¶ 8 On March 19, 2004, the court imposed an exceptional sentence on Count I. The court determined that Womac's offender score was zero and his standard range 240-320 months. Sitting without a jury, the court found that Anthony had been particularly vulnerable due to his young age and that Womac had violated a position of trust. Using its own findings as well as the findings inherent in the jury's verdict, the court ordered that Womac serve 480 months.
¶ 9 During the March 19th hearing, Womac moved to dismiss Counts II and III. He seems to have claimed that immediate and final dismissal was required if his right to double jeopardy was not to be violated. The State conceded that all the elements of Counts II and III were included within the elements of Count I, and that the court could not sentence on Counts II and III without violating double jeopardy. Nonetheless, the State asked that the charges and verdicts on *531 Counts II and III not be dismissed until Count I had survived post-sentence challenges. Holding that Counts II and III were "valid convictions" but that "[i]mposing separate punishments ... would violate constitutional double jeopardy,"[12] the trial court declined to impose sentence on Counts II and III, denied Womac's motion to dismiss those charges and verdicts, and simply left them in place on the public record.

I.
¶ 10 Womac argues on appeal that the trial court erred by admitting evidence of his uncharged acts under ER 404(b). He contends that the incidents involving his other children showed only, or primarily, that he had a propensity to hit children.
¶ 11 Evidence of a defendant's prior bad acts is logically relevant[13]but legally inadmissible to show[14] that on the charged occasion, the defendant had and was acting in conformity with criminal propensities.[15] Sometimes, however, the same evidence is logically relevant and legally admissible to show a fact other than propensity, "such as... motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[16] When evidence is relevant both for the improper purpose of showing propensity and for the proper purpose of showing a fact other than propensity, the trial court must decide, using ER 403, whether the probative value that will result from using the evidence properly will be substantially outweighed by the unfair prejudice that will result from using the evidence improperly.[17] The decision is a discretionary one,[18] and we must uphold it unless it is manifestly unreasonable or untenable.[19]
¶ 12 Washington courts have applied these principles in cases similar to this one. In State v. Terry, for example, the court stated:
[W]here the defendant asserts that a child has died as a result of an accident in the absence of any intent on his part to harm the child, evidence of prior and subsequent incidents involving the defendant's treatment of children, including the deceased, may be relevant and necessary to prove an essential ingredient of the state's case.[[20]]
¶ 13 In this case, evidence of Womac's prior uncharged acts was logically relevant but legally inadmissible to show that he had a propensity to hit young children. In addition however, such evidence was logically relevant and legally admissible to rebut his claim  which comprised the central issue at trial  that he had dropped Anthony by accident. Applying ER 403, the trial court held that considerable probative value would result from using the evidence to show lack of accident, and that such value was not substantially outweighed by the unfair prejudice that might result if the evidence were used to show Womac's propensity to hit young children. As this was a reasonable view of the overall situation, we cannot say that the trial court abused its discretion.

II.
¶ 14 Citing Blakely v. Washington,[21] Womac argues that the trial court erred by *532 imposing an exceptional sentence. Blakely held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[22] The effect is to require that a jury find each fact needed to support the sentence that the defendant actually must serve.[23] The jury did not find each fact needed here, as the trial judge's findings of particular vulnerability and abuse of trust are essential to uphold an exceptional sentence of 480 months. Hence, the trial court erred.
¶ 15 In a brief filed before the Supreme Court's recent decision in State v. Hughes,[24] the State concedes that the trial court erred under Blakely. It argues, however, that the error was harmless or, if we reverse, that we should authorize an exceptional sentence after remand.
¶ 16 In Hughes, the Supreme Court held that a Blakely error cannot be harmless[25] and requires remand for re-sentencing within the standard range.[26] Accordingly, we vacate the 480-month sentence imposed on Count I and remand for re-sentencing within the standard range.

III.
¶ 17 Womac argues that his right against double jeopardy was violated when the trial court denied his motion to dismiss Counts II and III and left them on the record without accompanying sentences. The question that he raises is this: When the State concurrently charges alternative crimes, one greater and one lesser; the trier of fact returns guilty verdicts on both; and the trial court imposes sentence on the greater verdict but not on the lesser, does the defendant's right against double jeopardy entitle him to have the lesser charge and verdict dismissed before the greater verdict has survived whatever post-judgment challenges the defendant may elect to make? And if so, should the dismissal be conditional or unconditional?
¶ 18 We perceive four possible answers to these questions. One is to immediately dismiss the lesser charge and verdict unconditionally, even though the greater verdict and sentence are not yet final. Another is to immediately dismiss the lesser charge and verdict conditionally, allowing for its reinstatement if the greater verdict and sentence are later set aside. A third is to delay dismissal, so that the lesser charge and verdict remain in place until the greater verdict and sentence become final. A fourth is not to dismiss at all, so that the lesser charge and verdict remain in place forever. The record here shows that the trial court adopted the third or fourth of these possible answers, but it does not clearly show which one.
¶ 19 We reject the first, third, and fourth of these possible answers. The first gives insufficient weight to the State's interest in having one full and fair opportunity to prosecute its charges.[27] The fourth gives insufficient weight to the defendant's right not to suffer whatever social stigma might arise if the lesser verdict is left on the public record.[28] The third gives insufficient weight to *533 the defendant's right not to be socially stigmatized,[29] and also seems impractical  should the lesser charge and verdict be finally dismissed after the greater verdict and sentence were affirmed on direct appeal, or only after all possible post-conviction relief had been exhausted? If the latter, for how long should the lesser charge and verdict remain undismissed? If the former, what would happen if the lesser charge and verdict were dismissed after direct appeal, but then the defendant successfully obtained collateral relief?
¶ 20 For all these reasons, we think that the second of our possible answers is preferable to the others. To immediately dismiss recognizes the defendant's interest in not being socially stigmatized, and to dismiss conditionally recognizes the State's interest in having one full and fair opportunity to prosecute. If after remand the defendant so requests,[30] the trial court shall dismiss Counts II and III, provided that Count I is not later reversed, vacated, or otherwise set aside.

IV.
¶ 21 Lastly, Womac complains that the trial court committed "several errors that combine[d] to deprive [him] of his right to a fair trial."[31] If his first claimed error was error at all, it was cured when the trial court sustained his objection and struck the testimony. His last claimed error involves nonverbal conduct by the prosecutor that the trial judge could observe and allowed, that does not show in the record, and that we have no way to adequately review. We dealt with his other claimed errors in Section I. We conclude that cumulative error did not deny Womac a fair trial.
¶ 22 Summarizing, we affirm the conviction on Count I, remand for re-sentencing on that count within the standard range, and, if Womac so requests after remand, direct the trial court to conditionally dismiss Counts II and III in the manner discussed above.
We concur: ARMSTRONG, P.J., and HUNT, J.
NOTES
[1] Judge J. Dean Morgan heard oral argument in this case while serving as a member of this court. Since retired, he is now serving as Judge Pro Tempore.
[2] 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).
[3] The parties and record refer to the child both as Anthony Owings and Aiden Owings. The charging documents and jury verdicts use Anthony, so we will also.
[4] Report of Proceedings (RP) at 206. Womac also made statements to other witnesses that we need not recite here.
[5] RCW 9A.32.055.
[6] RCW 9A.32.050(1)(b).
[7] RCW 9A.42.020,.030.
[8] RCW 9A.36.120(1)(b)(i).
[9] Clerk's Papers (CP) at 80.
[10] CP at 78-79; see also RP at 70-73, 1033. The hearing also addressed proposed testimony about several other incidents in which Womac lost his temper and hurt or threatened to hurt Brandon, plus proposed testimony from Kimberly Womac and Michelle Womac about Womac's violence toward them. That testimony was ruled inadmissible and is not in issue here.
[11] CP at 80.
[12] CP at 28, 37.
[13] ER 401; State v. Herzog, 73 Wash.App. 34, 43-45, 47-48, 867 P.2d 648, review denied, 124 Wash.2d 1022, 881 P.2d 255 (1994).
[14] ER 404(a)(preamble); ER 404(b)(first sentence).
[15] State v. DeVincentis, 150 Wash.2d 11, 17, 74 P.3d 119 (2003).
[16] ER 404(b).
[17] Herzog, 73 Wash.App. at 48-50, 867 P.2d 648.
[18] Herzog, 73 Wash.App. at 49-50, 867 P.2d 648; State v. Terry, 10 Wash.App. 874, 884, 520 P.2d 1397 (1974).
[19] State v. O'Connor, 155 Wash.2d 335, 351, 119 P.3d 806 (2005); State v. Elmore, 139 Wash.2d 250, 284-85, 985 P.2d 289 (1999), cert. denied, 531 U.S. 837, 121 S.Ct. 98, 148 L.Ed.2d 57 (2000).
[20] 10 Wash.App. at 883, 520 P.2d 1397; see also State v. Fitzgerald, 39 Wash.App. 652, 661-62, 694 P.2d 1117 (1985); State v. Bouchard, 31 Wash.App. 381, 384-85, 639 P.2d 761, review denied, 97 Wash.2d 1021 (1982); 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 404.21, at 438 (4th ed.1999).
[21] 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403.
[22] 542 U.S. at 301, 124 S.Ct. 2531 (quoting Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)).
[23] State v. Borboa, 124 Wash.App. 779, 786-87, 102 P.3d 183 (2004), review granted, 154 Wash.2d 1020, 116 P.3d 398 (2005).
[24] 154 Wash.2d 118, 110 P.3d 192 (2005).
[25] Hughes, 154 Wash.2d at 148, 110 P.3d 192. The United States Supreme Court recently granted certiorari, apparently to review this proposition. See State v. Recuenco, 154 Wash.2d 156, 110 P.3d 188 (2005), cert. granted, ___ U.S. ___, 126 S.Ct. 478, 163 L.Ed.2d 362 (2005).
[26] Hughes, 154 Wash.2d at 156, 110 P.3d 192.
[27] State v. Corrado, 81 Wash.App. 640, 645-46, 915 P.2d 1121 (1996) ("jeopardy should `terminate' when the State has had  but not before the State has had  one full and fair opportunity to prosecute").
[28] See State v. Gohl, 109 Wash.App. 817, 822, 37 P.3d 293 (2001) ("The fact of multiple convictions, with the concomitant societal stigma and potential to increase sentence under recidivist statutes for any future offense violated double jeopardy even where, as here, the trial court imposed only one sentence for the two offenses.").
[29] Gohl, 109 Wash.App. at 822, 37 P.3d 293.
[30] Nothing herein requires the trial court to dismiss if the defendant does not so request. We recognize that under particular circumstances, a defendant might wish to leave the lesser charge and verdict in place to minimize procedural concerns, e.g., appealability. Our discussion here is limited to the facts before us, one of which is that Womac moved for immediate dismissal.
[31] Br. of Appellant at 17.