[No. 78166-4. En Banc.]
Argued October 26, 2006.      Decided June 14, 2007.

THE STATE OF WASHINGTON, *Respondent*, v. BRIAN ZANE WOMAC, *Petitioner*.

*Rebecca W. Bouchey*, for petitioner.

*Gerald A. Horne, Prosecuting Attorney*, and *Michelle Luna-Green, Deputy*, for respondent.

¶1 SANDERS, J. — Following a jury trial, Brian Womac was convicted of homicide by abuse (Count I), second degree felony murder (Count II), and first degree assault (Count III) for the death of his son, Anthony Owings. The trial court entered judgment on all three convictions but imposed an exceptional sentence on Count I only (homicide by abuse). The court denied Womac's motion to dismiss Counts II and III and left both on his record absent accompanying sentences.

¶2 The Court of Appeals affirmed Womac's conviction for Count I. The court also remanded for resentencing within the standard range on that count and directed the trial court to conditionally dismiss Counts II and III, allowing for reinstatement should Count I later be reversed, vacated, or set aside.

¶3 Womac now claims the Court of Appeals violated double jeopardy principles by failing to vacate his convictions for felony murder and first degree assault. We agree. Because Womac's three separate convictions constitute the "same offense" for purposes of double jeopardy, his convictions for felony murder and assault in the first degree should be vacated. We reverse the Court of Appeals' order to conditionally dismiss Counts II and III, and we direct the trial court to vacate Womac's convictions for both charges.

## FACTS

¶4 In December 2002 Brian Womac and Christa Owings brought their four-month-old son Anthony Owings, who was suffering head injuries, to St. Peter Hospital in Olympia. Anthony was airlifted to Harborview Medical Center in Seattle where he died from his injuries early the next morning on December 2, 2002.

¶5 The State charged Womac with homicide by abuse, felony murder in the second degree (based on the predicate offense of criminal mistreatment in the first or second

degree[1]), and assault of a child in the first degree. In January 2004 a jury convicted Womac of all three charges. The trial court entered judgment on all three counts and imposed an exceptional sentence of 480 months on Count I after finding two aggravating circumstances: particular vulnerability of the victim due to extreme youth and abuse of a position of trust. The court found the convictions for Counts II and III were "valid," but to avoid violating double jeopardy provisions did not impose sentences on either count. 6 Verbatim Report of Proceedings (VRP) at 1067.

¶6 Womac moved to dismiss Counts II and III, claiming dismissal was necessary to avoid a double jeopardy violation. The State asked that the charges and verdicts on Counts II and III remain in place until Count I had survived postsentence challenges. The trial court determined double jeopardy did not require dismissal of Counts II and III and left both convictions on Womac's record.

¶7 The Court of Appeals affirmed the verdict on Count I but remanded for resentencing on that count within the standard range. *State v. Womac*, 130 Wn. App. 450, 458, 123 P.3d 528 (2005). Because the aggravating circumstances of particular vulnerability and abuse of trust (justifying Womac's exceptional sentence) were not submitted to a jury and proved beyond a reasonable doubt, the Court of Appeals and the State agreed the trial court erred in violation of *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L.

---

[1] "A parent of a child, the person entrusted with the physical custody of a child or dependent person, a person who has assumed the responsibility to provide to a dependent person the basic necessities of life, or a person employed to provide to the child or dependent person the basic necessities of life is guilty of criminal mistreatment in the first degree if he or she recklessly, as defined in RCW 9A.08.010, causes great bodily harm to a child or dependent person by withholding any of the basic necessities of life." RCW 9A.42.020(1).

"A parent of a child, the person entrusted with the physical custody of a child or dependent person, a person who has assumed the responsibility to provide to a dependent person the basic necessities of life, or a person employed to provide to the child or dependent person the basic necessities of life is guilty of criminal mistreatment in the second degree if he or she recklessly, as defined in RCW 9A.08.010, either (a) creates an imminent and substantial risk of death or great bodily harm, or (b) causes substantial bodily harm by withholding any of the basic necessities of life." RCW 9A.42.030(1).

Ed. 2d 403 (2004). The State, however, argued the error was harmless and requested the Court of Appeals uphold Womac's exceptional sentence. The Court of Appeals, citing *State v. Hughes*, 154 Wn.2d 118, 110 P.3d 192 (2005), for the proposition that a *Blakely* error *cannot* be harmless, vacated the 480-month exceptional sentence and remanded for resentencing within the standard range.

¶8 Addressing Womac's double jeopardy claim, the Court of Appeals directed the trial court to "conditionally dismiss Counts II and III," allowing for reinstatement should Count I later be reversed, vacated, or otherwise set aside. *Womac*, 130 Wn. App. at 460. The court found this solution properly balanced the State's interest in prosecuting its charges and Womac's right to avoid social stigma arising from multiple convictions.

¶9 Womac filed a petition for review asking this court to determine (1) whether the Court of Appeals erred when it held the trial court is not required to vacate his convictions for felony murder and assault, (2) whether the Court of Appeals erred when it affirmed the trial court's admittance of Womac's prior bad acts under ER 404(b), and (3) whether the Court of Appeals erred when it held cumulative error did not deprive Womac of a fair trial. Pet. for Discretionary Review at 1.

¶10 We granted review as to the double jeopardy issue only and requested the parties to address whether, in light of *Washington v. Recuenco*, 548 U.S. 212, 221-22, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006), the Court of Appeals properly remanded for resentencing within the standard range. We now affirm the Court of Appeals' remand for resentencing on Count I within the standard range and reverse the Court of Appeals' order to conditionally dismiss Counts II and III. Accordingly, we direct the trial court to vacate Womac's convictions for felony murder and assault in the first degree.

## STANDARD OF REVIEW

¶11 We review questions of law de novo. *State v. Johnson*, 128 Wn.2d 431, 443, 909 P.2d 293 (1996).

## ANALYSIS

I.  The Trial Court's Failure To Vacate Womac's Convictions for Felony Murder and Assault in the First Degree Violates Double Jeopardy

A.  The United States and Washington Constitutions Prohibit Multiple Punishments for a Single Offense

¶12  Brian Womac was found to have committed a single offense against a single victim yet three separate convictions remain on his record. "That it is unjust and oppressive to multiply punishments for a single offense is a concept which has gained recognition in the courts of this state." *State v. Johnson*, 92 Wn.2d 671, 678, 600 P.2d 1249 (1979) (citing *State v. Maloney*, 78 Wn.2d 922, 481 P.2d 1 (1971)); *see also State v. Calle*, 125 Wn.2d 769, 776, 888 P.2d 155 (1995) (Courts may not exceed legislative authority by imposing multiple punishments for the same offense. (citing *Albernaz v. United States*, 450 U.S. 333, 334, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1981) (citing *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977)))).

¶13  The double jeopardy doctrine protects defendants against "prosecution oppression." 5 WAYNE R. LaFAVE, JEROLD H. ISRAEL & NANCY J. KING, CRIMINAL PROCEDURE § 25.1(b), at 630 (2d ed. 1999). The Fifth Amendment to the United States Constitution provides, "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . ." Article I, section 9 of the Washington Constitution mirrors the federal constitution, stating, "[n]o person shall be . . . twice put in jeopardy for the same offense." "Washington's double jeopardy clause offers the same scope of protection as the federal double jeopardy clause." *In re Pers. Restraint of Percer*, 150 Wn.2d 41, 49, 75 P.3d 488 (2003) (citing *State v. Gocken*, 127 Wn.2d 95, 107, 896 P.2d 1267 (1995)). Both prohibit "(1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3)

multiple punishments for the same offense imposed in the same proceeding." *Percer*, 150 Wn.2d at 48-49 (citing *State v. Bobic*, 140 Wn.2d 250, 260, 996 P.2d 610 (2000); *Gocken*, 127 Wn.2d at 100). RCW 10.43.050 also affords defendants protections against double jeopardy, providing in part:

> Whenever a defendant shall be acquitted or convicted upon an indictment or information charging a crime consisting of different degrees, he cannot be proceeded against or tried for the same crime in another degree, nor for an attempt to commit such crime, or any degree thereof.

██ ¶14 *"Jeopardy* means exposure to danger." 1 LINDA S. PORTNOY, WASHINGTON CRIMINAL PRACTICE IN COURTS OF LIMITED JURISDICTION § 15.05(C) at 15-7 (3d ed. 2005). Womac remains exposed to danger as three separate convictions (arising from a single offense) remain on his record after the trial court determined that sentencing on all three would violate double jeopardy. As Womac's counsel correctly asserts, it is unjust

> to find a double jeopardy violation and hold these convictions in a safe for a rainy day, in the event that the homicide by abuse gets reversed . . . then they can sort of rise from the dead like Jesus on the third day and bite my client, and he can be sentenced on convictions that the court already ruled violated double jeopardy.

7 VRP at 1072.

¶15 To permit such a practice allows the State multiple bites at the apple by labeling one crime by three different names and upholding any and all resulting convictions. And the State, "with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States*, 355 U.S. 184, 187-88, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957).

### B. "Same Evidence" Rule

¶16 Washington follows the "same evidence" rule, which this court adopted in 1896. *Calle*, 125 Wn.2d at 777. "[T]he defendant's double jeopardy rights are violated if he or she is convicted of offenses that are identical both in fact and in law." *Id.* at 777. The "same evidence" rule is sometimes referred to as the " 'same elements' test." *See Gocken*, 127 Wn.2d at 101 (quoting *United States v. Dixon*, 509 U.S. 688, 696, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993)). "Washington's 'same evidence' test is very similar to the rule set forth in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932)." *Calle*, 125 Wn.2d at 777. The same evidence rule controls "unless there is a clear indication that the legislature did not intend to impose multiple punishment." *State v. Gohl*, 109 Wn. App. 817, 821, 37 P.3d 293 (2001).

¶17 "[O]ffenses are not constitutionally the same if there is any element in one offense not included in the other and proof of one offense would not necessarily prove the other." *State v. Trujillo*, 112 Wn. App. 390, 410, 49 P.3d 935 (2002) (citing *Calle*, 125 Wn.2d at 777-78). Washington courts, however, have occasionally found a violation of double jeopardy *despite* a determination that the offenses involved clearly contained different legal elements. *State v. Schwab*, 98 Wn. App. 179, 184-85, 988 P.2d 1045 (1999) ("*See State v. Johnson*, 92 Wn.2d 671, 679-80, 600 P.2d 1249 (1979) (examining convictions for first degree rape, first degree kidnapping, and first degree assault and striking the kidnapping and assault convictions even though the offenses involve different legal elements because the kidnapping and assault were incidental to, and elements of, the first degree rape); *State v. Potter*, 31 Wn. App. 883, 887-88, 645 P.2d 60 (1982) (concluding that convictions for reckless endangerment and reckless driving violated double jeopardy despite differing legal elements where the reckless endangerment conviction arose out of an act of reckless driving)"); *see also In re Pers. Restraint of Burchfield*, 111

Wn. App. 892, 899, 46 P.3d 840 (2002) ("Although the offenses do not contain identical legal elements, we conclude that the Legislature did not intend to punish shooting a victim both as an assault and as a homicide.").

¶18 In *Gohl*, Division One of the Court of Appeals held convictions for both assault and attempted murder violated double jeopardy even though incarceration was imposed for attempted murder only. The court concluded double jeopardy was implicated because attempted first degree murder and first degree assault convictions are the "same in law and in fact." 109 Wn. App. at 822. Accordingly, the court vacated the assault convictions.[2] *Id.*

¶19 In *State v. Read*, 100 Wn. App. 776, 998 P.2d 897 (2000), Division Three of the Court of Appeals found convictions for second degree murder and first degree assault violated double jeopardy and the court vacated the assault conviction. The *Read* court determined the offenses were legally "the same" under the "same evidence test" since proof of second degree intentional murder necessarily also proves first degree assault. *Id.* at 791-92. The court found the offenses were the same "*in fact*" because the offenses were based on the same act directed toward the same victim. *Id.* at 791. This determination was made *despite* the fact that the sentencing court did not "expressly find that the two crimes were the 'same criminal conduct.'"[3] *Id.* at 793 n.7.

---

[2] *Gohl* relied on *State v. Read*, 100 Wn. App. 776, 998 P.2d 897 (2000), for the proposition that second degree murder and first degree assault were the same in fact because they were based on the same act directed at the same victim, and that the offenses were the same in law for "where the harm is the same for both offenses, it would be inconceivable that the Legislature intended double punishment for both." *Gohl*, 109 Wn. App. at 821.

[3] "Same criminal conduct," as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim.
RCW 9.94A.589(1)(a).

C.  Womac's Three Convictions Constitute the "Same Offense" for Purposes of Double Jeopardy

¶20 Here, the trial court found all three of Womac's counts constituted the "same criminal conduct." 7 VRP at 1076-77. In an appendix to the judgment and sentence, the trial court noted imposing separate punishments for Count I (homicide by abuse)[4] and Count II (murder in the second degree)[5] would violate constitutional double jeopardy provisions. *See* Clerk's Papers (CP) at 37 (App. A to J. & Sent.). The court similarly noted separate punishments for Counts I and III (assault of a child in the first degree)[6] would also violate double jeopardy. *Id.* The judge determined sentencing Womac on all three counts would violate double jeopardy provisions because Womac would receive "multiple punishment for basically the *same criminal conduct.*" 7 VRP at 1077 (emphasis added). The State conceded impos-

---

[4]
A person is guilty of homicide by abuse if, under circumstances manifesting an extreme indifference to human life, the person causes the death of a child . . . and the person has previously engaged in a pattern or practice of assault or torture of said child . . . .

RCW 9A.32.055(1).

[5]

A person is guilty of murder in the second degree when:

    . . . .
    (b) He or she commits or attempts to commit any felony, including assault, other than those enumerated in RCW 9A.32.030(1)(c), and, in the course of and in furtherance of such crime . . . he or she . . . causes the death of a person other than one of the participants . . . .

RCW 9A.32.050(1)(b).

[6] A person is guilty of assault of a child in the first degree by committing

    (a) . . . the crime of assault in the first degree, as defined in RCW 9A.36.011, against the child; *or*
    (b) [i]ntentionally assaults the child and *either*:
    (i) [r]ecklessly inflicts great bodily harm; or
    (ii) [c]auses substantial bodily harm, and the person has previously engaged in a pattern or practice either of (A) assaulting the child which has resulted in bodily harm that is greater than transient physical pain or minor temporary marks, or (B) causing the child physical pain or agony that is equivalent to that produced by torture.

RCW 9A.36.120(1) (emphasis added).

ing separate punishments for homicide by abuse and murder in the second degree would violate double jeopardy, admitting "under the facts of this case [assault in the first degree and homicide by abuse] would be same criminal conduct in that they involve[d] the same victim" and "occurred at the same time and place . . . ." 6 VRP at 1034-35.

¶21 However, notwithstanding double jeopardy concerns, the trial judge found Counts II and III to be "valid conviction[s]." *See* CP at 37-38 (App. A to J. & Sent.) ("Count II, murder in the second degree, is a valid conviction and the court would sentence the defendant on Count II if it were not prohibited from doing so by the double jeopardy provisions of the state and federal constitutions. . . . Count III is a valid conviction but no punishment will be imposed because of double jeopardy concerns.").

¶22 In *Schwab*, Division One of the Court of Appeals found convictions for second degree felony murder and first degree manslaughter for a single homicide violated double jeopardy. First, the court determined "second degree felony murder and first degree manslaughter are not the same offense in law" as "each offense includes an element that is not included in the other." 98 Wn. App. at 184. But while application of the "same evidence" test is indicative of legislative intent, the test is not always dispositive as to whether two offenses are the same for double jeopardy purposes. *Calle*, 125 Wn.2d at 778, 780. The rule establishes only a presumption which may be overcome by clear evidence of contrary intent. *See id.* at 780.

¶23 To further discern legislative intent, the *Schwab* court looked to the definition of homicide which reads:

the killing of a human being by the act, procurement, or omission of another, death occurring at any time, and is either (1) murder, (2) homicide by abuse, (3) manslaughter, (4) excusable homicide, or (5) justifiable homicide.

RCW 9A.32.010. From the plain language of the statute, the court concluded "one killing equals one homicide; one

unlawful homicide equals *either* murder, homicide by abuse, *or* manslaughter." *Schwab,* 98 Wn. App. at 188-89. Accordingly, the court found "the legislature did not intend to provide multiple punishments for a single homicide." *Id.* at 189. The court affirmed the defendant's conviction and sentence for second degree felony murder and vacated his conviction and sentence for first degree manslaughter.

¶24 The State agreed Womac's convictions for assault in the first degree and homicide by abuse constituted the same criminal conduct in that "they involve[d] the same victim" and "occurred at the same time and place." 6 VRP at 1035. And Womac could not have committed felony murder in the second degree without committing assault in the first degree. Because all three convictions constitute the same criminal conduct, the proper remedy is to vacate Counts II and III. *See Gohl,* 109 Wn. App. at 822.

### D. Convictions are "Punishments" for Purposes of Double Jeopardy

¶25 The State argues Womac's three convictions should stand since he was sentenced for homicide by abuse only. Br. of Resp't at 38. The trial judge also determined double jeopardy concerns are implicated *only when a defendant receives more than one sentence.* 6 VRP at 1042-43. This determination is incorrect. That Womac received only one sentence is of no matter as he still suffers the punitive consequences of his convictions. Counsel for Womac correctly asserts, "if Mr. Womac were to get into some trouble in prison and be charged with a crime, these convictions for murder in the second degree and assault in the second [sic] degree would have to count in his offender score . . . because they are still alive [and] have not been vacated . . . ." 7 VRP at 1071-72.

¶26 In *Calle* we held double jeopardy may be violated when a defendant receives multiple convictions for a single offense (regardless of whether concurrent sentences are imposed). *Calle,* 125 Wn.2d at 775; *see also In re Pers. Restraint of Orange,* 152 Wn.2d 795, 100 P.3d 291 (2004).

Relying on *Ball v. United States*, 470 U.S. 856, 864-65, 105 S. Ct. 1668, 84 L. Ed. 2d 740 (1985), this court found the stigma and impeachment value of multiple convictions remains despite passage of the Sentencing Reform Act of 1981, chapter 9.94A RCW,[7] and overruled a line of cases following the "concurrent sentence rule."[8] *Calle,* 125 Wn.2d at 775. In *Gohl* the State conceded the convictions for attempted murder and assault were based on the same acts and caused the same harm but argued lack of sentencing for the assaults avoided any double jeopardy violation. *Gohl,* 109 Wn. App. at 819. The court countered, "[the State's] argument contradicts the rule that conviction, and not merely imposition of a sentence, constitutes punishment." *Id.* at 822.

¶27 Both federal and state courts have cited *Ball* for the proposition that double jeopardy concerns arise in the presence of multiple convictions, regardless of whether resulting sentences are imposed consecutively or concurrently. *Calle,* 125 Wn.2d at 773. The Supreme Court in *Ball* emphasized the punitive nature of a conviction, finding:

> The separate *conviction*, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored. For example, the presence of two convictions on the record may delay the defendant's eligibility for parole or result in an increased sentence under a recidivist statute for a future offense. Moreover, the second conviction may be used to impeach the defendant's credibility and certainly carries the societal stigma accompanying any criminal conviction.

*Ball,* 470 U.S. at 865.

¶28 As this court noted in *Calle,* "[i]t is important to distinguish between charges and convictions—the State

---

[7] Before the Sentencing Reform Act of 1981, "the presence of multiple convictions [was] apt to affect the minimum sentence set by the parole board." *Johnson,* 92 Wn.2d at 679.

[8] The "concurrent sentence rule" allowed multiple convictions to stand for one criminal act or transaction when the sentences ran concurrently and did not exceed the penalty for one of the offenses of which the defendant was properly convicted. *See State v. Johnson,* 96 Wn.2d 926, 930-31, 639 P.2d 1332 (1982).

may properly file an information charging multiple counts under various statutory provisions where evidence supports the charges, *even though convictions may not stand* for all offenses where double jeopardy protections are violated." *Calle*, 125 Wn.2d at 777 n.3 (emphasis added) (citing *Ball*, 470 U.S. at 860); *see also Johnson*, 92 Wn.2d at 679 ("Conviction in itself, even without imposition of sentence, carries an unmistakable onus which has a punitive effect . . . .").

### E. Womac's Convictions for Counts II and III Should be Vacated

¶29 The Court of Appeals' conditional dismissal of Womac's lesser charges and verdicts, allowing for reinstatement if the greater verdict and sentence are later set aside, is entirely without support. *Womac*, 130 Wn. App. at 458-59. The State may bring (and a jury may consider) multiple charges arising from the same criminal conduct in a single proceeding. *State v. Freeman*, 153 Wn.2d 765, 770, 108 P.3d 753 (2005) (citing *State v. Michielli*, 132 Wn.2d 229, 238-39, 937 P.2d 587 (1997)). Courts may *not*, however, enter multiple convictions for the same offense without offending double jeopardy. *Id.* at 771.

¶30 The State declares the Court of Appeals' approach "is consistent with the trial court's ruling in [Womac's] case," which was to "let the jury verdict stand but not enter judgment and sentence on the conviction." Suppl. Br. of Resp't at 3. The State continues, "[i]t is only when the court enters a judgment and sentence that double jeopardy issues arise and vacation is required." *Id.* at 3-4. But here, the trial court *did* enter judgment on Counts II and III, declaring both convictions "valid" while clarifying that imposing separate punishments would violate double jeopardy provisions. *See* CP at 28 (J. & Sent.), 37-38 (App. A to J. & Sent.).

¶31 In *State v. Ward*, 125 Wn. App. 138, 104 P.3d 61 (2005) the jury found the defendant guilty of second degree felony murder and alternatively first degree manslaughter

(a lesser included offense of second degree intentional murder). The trial court entered a judgment and sentence solely on the second degree felony murder conviction; the court denied the defendant's motion to vacate the first degree manslaughter conviction and *did not mention* the jury's finding of guilt on the manslaughter conviction in the judgment and sentence. The judgment and sentence for Ward's second degree felony murder was vacated. Ward argued he could not be charged, tried, or sentenced for first degree manslaughter because the manslaughter verdict should have been vacated, or was vacated by "operation of law," and that once vacated, the verdict is no longer available for the court to " 'revive.' " *Id.* at 144. The Court of Appeals determined convicting and sentencing a defendant for both second degree felony murder and first degree manslaughter would violate double jeopardy and found where there is a violation of double jeopardy the remedy is to vacate one of the convictions and sentences. *Id.* But the court found no double jeopardy violation in Ward's case as the judge entered judgment and sentenced Ward only on the second degree felony murder charge. *Id.* And because there was no violation of double jeopardy, reasoned the court, the trial court was not required to vacate Ward's manslaughter charge. *Id.*

¶32 *Ward* is distinguishable from the present case. Here, there *was* a double jeopardy violation because Womac's judgment included all three convictions; therefore, vacation of the convictions for Counts II and III is required. Also, Womac was never charged in the alternative; instead, he was charged with three separate offenses in a single pro-ceeding. Womac correctly argues a court has no authority to "take a verdict on another charge . . . , find that it violates double jeopardy . . . , not sentence the defendant . . . on it[,] and just . . . hold it in abeyance for a later time." 7 VRP at 1074.

¶33 In *Trujillo*, 112 Wn. App. 390, a jury convicted four defendants of first degree assault and, in the alternative,

first degree attempted murder.[9] The Court of Appeals stated, "where the jury returns a verdict of guilty on each alternative charge, the court should enter a judgment on the greater offense only and sentence the defendant on that charge without reference to the verdict on the lesser offense." *Id.* at 411. The Court of Appeals reasoned since the verdict for first degree assault was not reduced to judgment, it "does not subject the appellants to any future jeopardy." *Id.* The court also mentioned that if the jury's verdict on assault *was in fact reduced to judgment*, "the trial court should enter an order vacating the assault judgment." *Id.* at 412 n.15.

¶34 Again, Womac was not charged in the alternative. He was charged with homicide by abuse, murder in the second degree, and assault in the second degree, all separate counts as separate charges. And Womac's convictions *were* in fact reduced to judgment. Accordingly, we direct the trial court to vacate Counts II and III. *See Ball*, 470 U.S. at 864-65; *State v. Weber*, 159 Wn.2d 252, 265-66, 149 P.3d 646 (2006); *Schwab*, 98 Wn. App. at 180 (remedy for double jeopardy violation is to vacate one of the underlying convictions).

II.  In Light of *Washington v. Recuenco*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006), the Court of Appeals Properly Remanded for Resentencing Within the Standard Range

¶35 At Womac's sentencing the trial judge imposed an exceptional sentence of 480 months based on two aggravating factors: particular vulnerability of the victim and abuse of a position of trust. CP at 30, 43 (Findings of Fact and Conclusions of Law for Exceptional Sentence). Per existing state sentencing law, these factual findings were made by the judge and not submitted to the jury. *See* former RCW 9.94A.535 (2003).

---

[9] "Where there are alternate ways to commit a crime it is permissible to charge both alternatives in the same count." *State v. Bowerman*, 115 Wn.2d 794, 800, 802 P.2d 116 (1990) (aggravated premeditated murder and felony murder) (citing *State v. Scott*, 64 Wn.2d 992, 993, 395 P.2d 377 (1964)).

¶36 In *Apprendi v. New Jersey*, the United States Supreme Court determined, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). The Court of Appeals held the trial court's imposition of an exceptional sentence based on factors not found by Womac's jury was error under *Apprendi* and *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). *Blakely* clarified the " ' "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*' "[10] *Recuenco*, 548 U.S. at 216 (quoting *Blakely*, 542 U.S. at 303). Relying on *State v. Hughes*, 154 Wn.2d 118, 110 P.3d 192 (2005), for the proposition that a *Blakely* error is "structural error," which always requires reversal, the Court of Appeals remanded for resentencing Womac within the standard range. *Womac*, 130 Wn. App. at 458.

¶37 In *Recuenco*, the United States Supreme Court abrogated *Hughes*, holding failure to submit a sentencing factor to the jury is *not* structural error and may be subject to harmless error analysis. *Recuenco*, 548 U.S. at 221-22. The Court held, "[f]ailure to submit a sentencing factor to the jury, like failure to submit an element to the jury," *id*. at 222,[11] may be subject to harmless error analysis, observing, "[o]nly in rare cases has this Court held that an error is

---

[10] Following *Blakely*, the legislature amended the Sentencing Reform Act of 1981, permitting entry of an exceptional sentence provided (1) "prior to trial or entry of a guilty plea . . . the state . . . give[s] notice that it is seeking a sentence above the standard range. The notice . . . state[s] the aggravating circumstances upon which the requested sentence will be based . . . ." and "(2) [t]he facts supporting aggravating circumstances [are] proved to a jury beyond a reasonable doubt." RCW 9.94A.537. These provisions became effective April 15, 2005, nearly one year after Womac's proceedings. LAWS OF 2005, ch. 68, § 4.

[11] The United States Supreme Court stated that for Sixth Amendment purposes, elements and sentencing factors must be treated the same as both are facts that must be tried to the jury and proved beyond a reasonable doubt. *Recuenco*, 548 U.S. at 220.

structural, and thus requires automatic reversal." *Id.* at 218. The Court concluded we erred in *State v. Recuenco*, 154 Wn.2d 156, 164, 110 P.3d 188 (2005) by relying on *Hughes* for the proposition that a *Blakely* error can never be harmless. *Recuenco*, 548 U.S. at 217-18. In light of *Washington v. Recuenco*, we must now determine whether the Court of Appeals properly remanded for resentencing Womac within the standard range.

¶38 In *Recuenco* the United States Supreme Court opined "[i]f . . . Washington law does not provide for a procedure by which [Recuenco's] jury could have made a finding pertaining to his possession of a firearm, that merely suggests that respondent will be able to demonstrate that the *Blakely* violation *in this particular case was not harmless.*"[12] *Id.* at 218 (same emphasis added). Following this reasoning, Womac argues, "[b]ecause state law does not and did not provide for a jury to be empanelled to make the factual findings necessary to support the exceptional sentence in this case, the error cannot be said to be harmless beyond a reasonable doubt." Suppl. Br. of Pet'r at 3. We find this argument persuasive.

¶39 Former RCW 9.94A.535 provided that

> [t]he court may impose a sentence outside the standard sentence range for an offense if it finds . . . that there are substantial and compelling reasons justifying an exceptional sentence. Whenever a sentence outside the standard sentence range is imposed, the court shall set forth the reasons for its decision in written findings of fact and conclusions of law.

¶40 As explained by *Hughes*, former RCW 9.94A.535 "explicitly direct[ed] the *trial court* to make the necessary factual findings" to support an exceptional sentence "and d[id] not include any provision allowing a jury to make

---

[12] The Supreme Court also observed, "*Hughes* does not appear to foreclose the possibility that an error could be found harmless because the jury which convicted the defendant would have concluded, if given the opportunity," the requisite facts for an exceptional sentence; but if such opportunity were not legally feasible under state law, we do not reach the question of what the jury *might* have concluded. *Recuenco*, 548 U.S. at 217.

those determinations during trial, during a separate sentencing phase, or on remand." *Hughes*, 154 Wn.2d at 149 (emphasis added). *Hughes* also declared, "no procedure is currently in place allowing juries to be convened for the purpose of deciding aggravating factors either after conviction or on remand after an appeal." *Id.* Our recent decision in *State v. Pillatos* confirmed "trial courts do not have inherent authority to empanel sentencing juries." 159 Wn.2d 459, 470, 150 P.3d 1130 (2007).

¶41 Furthermore, the new sentencing provisions, Laws of 2005, chapter 68 (providing for a procedure whereby facts supporting aggravated circumstances are proved to a jury beyond a reasonable doubt), do not apply to Womac. *Pillatos* held the new sentencing provisions apply only to "pending criminal matters where trials have not begun or pleas not yet accepted." *Id.* at 470. As Womac correctly observes, *even if* the new sentencing provisions applied to him, RCW 9.94A.537(1) permits the imposition of an exceptional sentence *only* when the State has given notice, prior to trial, that it intends to seek a sentence above the standard sentencing range; and it is too late for the State to comply with that requirement. In addition, RCW 9.94A.537(2) requires a *jury* to find the existence of facts supporting aggravating circumstances, and as discussed above, state law does not authorize impaneling a new jury to make such findings. *See Pillatos*, 159 Wn.2d at 470.

¶42 Accordingly, we hold that because there was no legal procedure whereby Womac's jury could have made the findings necessary to support his exceptional sentence, the error was not harmless.[13]

¶43 The State argues that if we affirm the Court of Appeals remand for resentencing, we should not direct the

---

[13] We leave for another day the more general question of whether, under Washington law, failure to submit a sentencing factor to the jury (and by extension failure to obtain a jury finding on aggravating circumstances) is subject to harmless error analysis. It is unnecessary to resolve this issue now because even assuming the jury's failure to make factual findings necessary to support Womac's exceptional sentence *is* subject to harmless error analysis, we are convinced the error here was not harmless beyond a reasonable doubt.

sentencing court to impose a sentence within the standard range. The State acknowledges that post-*Blakely* "a jury must hear evidence of aggravating circumstances," but suggests that on remand "the sentencing court should be permitted to convene a panel of jurors and seat a jury to hear evidence." Br. of Resp't at 49, 50. However, per our discussion of *Pillatos* above, this argument does not have merit. Therefore, because Womac's jury could not have made the findings necessary to support his exceptional sentence, trial courts are not authorized to impanel juries, and the new sentencing laws do not apply to Womac (thereby foreclosing the option of a jury finding the presence of aggravating factors), we direct the court to resentence Womac within the standard range.

## CONCLUSION

¶44 We affirm the Court of Appeals' remand for resentencing on Count I within the standard range. We reverse the Court of Appeals' order to conditionally dismiss Counts II and III and direct the trial court to vacate Womac's convictions for felony murder and assault in the first degree.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, BRIDGE, CHAMBERS, OWENS, and FAIRHURST, JJ., concur.

¶45 J.M. JOHNSON, J. (concurring in part and dissenting in part) — A jury of Brian Womac's peers found him guilty of abusing his infant son, Anthony, so severely that Anthony died.[14] The trial court gave Womac an exceptional sentence in light of Anthony's vulnerability due to his extreme youth (four months) and Womac's having abused a position of trust in perpetrating his crime. While, admittedly, the trial court erred in failing to submit these aggravating factors to

---

[14] *State v. Womac*, 130 Wn. App. 450, 452, 123 P.3d 528 (2005); *see* RCW 9A.32.055(1) (defining "homicide by abuse").

the jury,[15] the court's error was harmless as there can be no reasonable doubt that the jury would have found these factors had it been given the opportunity to do so.[16] Because the majority would hold otherwise, I dissent in part from its decision.[17]

¶46 Following his conviction for homicide by abuse,[18] the trial court determined that Womac's offender score was zero and his standard range sentence was 240 to 320 months. *State v. Womac*, 130 Wn. App. 450, 452, 455, 123 P.3d 528 (2005). However, the trial court gave Womac an exceptional sentence of 480 months based on its finding of two aggravating factors: (1) particular vulnerability of the victim due to extreme youth and (2) abuse of a position of trust. *Id.* at 455; majority at 648. By failing to submit these factors to the jury, the trial court violated the United States Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). *See* majority at 648.

¶47 Due to this error, the majority would affirm the Court of Appeals' decision to remand for resentencing within the standard range. Majority at 649. The majority rejects the State's contention that the trial court's error was harmless. Majority at 663. I would hold the error harmless and affirm Womac's exceptional sentence.

¶48 According to the Supreme Court, " ' "most constitutional errors can be harmless." ' " *Washington v. Recuenco*, 548 U.S. 212, 218, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006)

---

[15] *See Blakely v. Washington*, 542 U.S. 296, 303-04, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

[16] *See Washington v. Recuenco*, 548 U.S. 212, 221-22, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006) (Failure to submit sentencing factor, like failure to instruct on element of crime, subject to harmless error analysis.); *Neder v. United States*, 527 U.S. 1, 17, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (Error may be deemed harmless "where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error.").

[17] I concur in the majority's holding that double jeopardy principles require remand for trial court to vacate convictions of felony murder and first degree assault. Majority at 660.

[18] Womac was also convicted of second degree felony murder and first degree assault. *Womac*, 130 Wn. App. at 452.

(quoting *Neder v. United States*, 527 U.S. 1, 8, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 306, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991))). In *Recuenco*, the Supreme Court made clear that failure to submit a sentencing factor to the jury is subject to harmless error analysis. 548 U.S. at 221-22. In particular, the Court indicated that failure to submit a sentencing factor is to be treated analogously to omission of an element from the jury's instructions for purposes of harmless error analysis. *Id.* at 219-22. The Court repeatedly cited to its decision in *Neder* as the authoritative decision on harmless error analysis of the omission of an element from the jury's instructions. *Id.*

¶49 In *Neder*, the test applied by the Court was "whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" 527 U.S. at 15 (quoting *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)). The Court elaborated that "where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless." 527 U.S. at 17. This court has summarized the *Neder* approach as follows: "When applied to an element omitted from, or misstated in, a jury instruction, the error is harmless if that element is supported by uncontroverted evidence." *State v. Brown*, 147 Wn.2d 330, 341, 58 P.3d 889 (2002) (citing *Neder*, 527 U.S. at 18). Accordingly, the proper inquiry in the present case is whether the aggravating factors used by the trial court to support Womac's exceptional sentence are supported by uncontroverted evidence.

¶50 As noted above, the first aggravating factor relied upon by the trial court was the particular vulnerability of the victim due to extreme youth. The uncontroverted evidence introduced at trial established the following facts relevant to this aggravating factor: (1) Anthony was born two months premature and was four months old when he

died (3 Verbatim Report of Proceedings (VRP) at 251-52; 4 VRP at 496) and (2) At the time of his death, Anthony was unable to walk, crawl, roll over, or sit up on his own. 3 VRP at 266-67. In light of this evidence, I would conclude, beyond a reasonable doubt, that had the jury been given the opportunity it would have found Anthony was a particularly vulnerable victim. *See State v. Berube*, 150 Wn.2d 498, 513, 79 P.3d 1144 (2003) (upholding use of vulnerability aggravator based on victim's age of less than two years and his complete dependency on the defendants for his well-being); *State v. Fisher*, 108 Wn.2d 419, 425, 739 P.2d 683 (1987) (upholding use of vulnerability aggravator based on victim's age of five and a half years); *State v. Quigg*, 72 Wn. App. 828, 842, 866 P.2d 655 (1994) (upholding use of vulnerability aggravator based on victim's age of three to four years old).

¶51 The second aggravating factor relied upon by the trial court was abuse of a position of trust. The uncontroverted evidence introduced at trial established the following facts relevant to this aggravating factor: (1) Womac was Anthony's father (3 VRP at 249-52) and (2) Womac was the only adult taking care of Anthony when his fatal injuries were sustained. 2 VRP at 206; 3 VRP at 264-65. In light of this evidence, I would conclude, beyond a reasonable doubt, that had the jury been given the opportunity it would have found Womac abused a position of trust when he fatally assaulted Anthony. *See Berube*, 150 Wn.2d at 513 (upholding use of abuse of position of trust aggravator based on defendants' parent and parent-like status, respectively); *Quigg*, 72 Wn. App. at 842-43 (upholding use of abuse of position of trust aggravator based on defendant's occupying "position like a father" in relation to his victim). Because there can be no reasonable doubt that the jury would have found both of the aggravating factors at issue, the trial court's error in failing to submit those factors to the jury should be deemed harmless.

¶52 The majority attempts to avoid the conclusion that the trial court's error must be deemed harmless by ignoring

the substantive law on point and, instead, basing its decision solely on the proposition that the trial court's error cannot be deemed harmless due to a state procedural defect. Specifically, the majority would affirm the Court of Appeals decision to remand for resentencing within the standard range because "there was no legal procedure whereby Womac's jury could have made the findings necessary to support his exceptional sentence." Majority at 663. The majority would render its decision based solely on this point, despite the fact that Womac did not pursue this argument until his supplemental brief to this court. Such reliance is completely at odds with this court's practice. *State v. Hudson*, 124 Wn.2d 107, 120, 874 P.2d 160 (1994) (citing *State v. Clark*, 124 Wn.2d 90, 875 P.2d 613 (1994), *overruled on other grounds by State v. Catlett*, 133 Wn.2d 355, 945 P.2d 700 (1997); *State v. Wethered*, 110 Wn.2d 466, 755 P.2d 797 (1988)). To render a decision based on such a belated argument violates the fundamental principles of fairness, which underpin our adversarial system of justice and will only encourage future litigants to attempt to gain advantage through similar delay tactics.

¶53 In sum, both of the aggravating factors relied upon by the trial court in giving Womac an exceptional sentence are supported by substantial, uncontroverted evidence. Because there can be no reasonable doubt that the jury would have found both of the factors at issue, I would hold the trial court's error in failing to submit these factors to the jury was harmless. The majority's reliance on Womac's untimely assertion of a state procedural ground for affirmance is inappropriate and unpersuasive. Accordingly, I dissent.

Reconsideration denied September 18, 2007.