[No. 43255-9-I.　Division One.　December 6, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. DALE L. SCHWAB, JR., *Appellant*.

*James Robert Dixon* of *Nielsen Broman & Associates, P.L.L.C.*; and *Catherine E. Glinski*, for appellant.

*James H. Krider, Prosecuting Attorney*, and *David Frederick Thiele, Deputy*, for respondent.

WEBSTER, J. — Appellant Dale Schwab was convicted of second degree felony murder *and* first degree manslaughter for a single homicide. He argues on appeal that convictions for second degree felony murder and first degree manslaughter for one homicide violate state and federal constitutional guarantees against double jeopardy. Schwab also argues that the trial court erred in refusing to instruct on second degree manslaughter as a lesser-included offense of first degree murder where instructions on first degree manslaughter and voluntary intoxication were given.

We hold that convictions for second degree felony murder and first degree manslaughter for a single homicide violate the state and federal constitutional guarantees against double jeopardy. We need not address Schwab's instructional challenge.

## BACKGROUND

Schwab was charged with first degree premeditated murder and second degree felony murder based on second degree assault and/or first degree theft. A jury convicted Schwab of second degree felony murder *and* first degree manslaughter as a lesser included offense of first degree murder. The trial court imposed standard range sentences for both convictions to be served concurrently.

Evidence at trial showed that Schwab and Aaron Beymer were drinking together under a bridge in the evening of

December 22, 1997, and the early morning of December 23, 1997. Upon encountering Ernest Sena, Schwab and Beymer engaged in an assault upon him. In statements to the police, Schwab said that his participation in the assault was limited to kicking Sena once. Sena was rendered unconscious by the assault. Schwab and Beymer checked Sena's pockets for money and took what little they found. Sena was placed unconscious on nearby railroad tracks and covered with carpet and other debris. A train came through minutes thereafter and severed Sena's body.

Testimony concerning Schwab's early statements to third parties indicates that he participated with Beymer in placing Sena on the tracks. Testimony about Schwab's later statements to police indicates that he said he did *not* participate in placing the victim on the tracks, rather it was all Beymer's doing. Schwab told the police that in his earlier statements to third parties he only meant that he was present when Beymer killed Sena. Beymer's testimony at trial[1] was that Schwab made no comment when Beymer suggested, "Let's kill this guy," and did not participate in placing Sena on the tracks. The evidence is consistent that Schwab was present when Sena was put on the tracks and watched as the train came through.

Evidence at trial indicates that Schwab was under the influence of alcohol and drugs at the time of the assault and homicide. The trial court instructed on voluntary intoxication:

> No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his condition, but whenever the actual existence of any particular mental state is a necessary element to constitute a particular species or degree of crime, the fact of his intoxication may be taken into consideration in determining such mental state.

CP at 39. The trial court instructed on first degree man-

---

[1]Beymer pleaded guilty to first degree manslaughter and testified as a State's witness.

slaughter but refused to give an instruction on second degree manslaughter.

## ANALYSIS

"[T]he guaranty against double jeopardy protects against multiple punishments for the same offense." *State v. Calle*, 125 Wn.2d 769, 776, 888 P.2d 155 (1995) (citing *Whalen v. United States*, 445 U.S. 684, 688, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980)). Schwab argues that his convictions for felony murder and manslaughter violate double jeopardy because the legislature intends only one punishment for one unlawful homicide.

"Within constitutional constraints, the legislative branch has the power to define criminal conduct and assign punishment for such conduct." *Id.* at 776 (citing *Whalen*, 445 U.S. at 689). Our review is limited to determining whether the trial court exceeded legislative authority to impose multiple punishments for the same offense. *See id.* (citing *Albernaz v. United States*, 450 U.S. 333, 344, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1981)). To determine whether the legislature intended to authorize multiple punishments for second degree felony murder and first degree manslaughter, we start with the language of the statutes. *See id.* (citing *Albernaz*, 450 U.S. at 336). If legislative intent is not expressly indicated, we turn to rules of statutory construction. *See id.* at 777.

### A. In the Absence of Express Legislative Intent We Turn to Rules of Statutory Construction

We turn first to the homicide provisions. Felony murder and manslaughter are both statutorily defined in the homicide chapter of the Washington Criminal Code (Title 9A RCW). *See* chapter 9A.32 RCW. Homicide itself is defined in RCW 9A.32.010:

Homicide is the killing of a human being by the act, procurement, or omission of another, death occurring at any time, and is *either* (1) murder, (2) homicide by abuse, (3) manslaughter, (4) excusable homicide, *or* (5) justifiable homicide.

(emphasis supplied). An individual is guilty of second degree felony murder when:

> He commits or attempts to commit any felony other than those enumerated in RCW 9A.32.030(1)(c), and, in the course of and in furtherance of such crime or in immediate flight therefrom, he, or another participant, causes the death of a person other than one of the participants; . . . .

RCW 9A.32.050(1)(b). A person commits manslaughter in the first degree when he or she "recklessly causes the death of another person." RCW 9A.32.060(1)(a).

In *Calle*, the question was whether the legislature intended to allow multiple punishments for violations of the rape and incest statutes that arose out of a single act of sexual intercourse. *See* 125 Wn.2d at 776. The court first examined the statutes at issue and found that unlike the statutory provisions for burglary, *see* RCW 9A.52.050, the incest and rape statutes do not expressly authorize convictions for each arising out of the same act. *See Calle*, 125 Wn.2d at 776. The court therefore turned to rules of statutory construction to discern legislative intent. *See id.* at 777. Likewise here, the felony murder and manslaughter provisions do not explicitly authorize convictions for each arising out of the same homicide. Thus, we turn to rules of statutory construction.

B. The Same Evidence Rule

Where legislative intent is not expressly indicated, we apply the "same evidence" rule of statutory construction:

> "In order to be the 'same offense' for purposes of double jeopardy the offenses must be the same in law and in fact. If there is an element in each offense which is not included in the other, and proof of one offense would not necessarily also prove the other, the offenses are not constitutionally the same and the double jeopardy clause does not prevent convictions for both offenses."

*See Calle*, 125 Wn.2d at 777 (quoting *State v. Vladovic*, 99 Wn.2d 413, 423, 662 P.2d 853 (1983)). This rule is similar

to the one established in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932):

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*See also United States v. Dixon*, 509 U.S. 688, 704, 113 S. Ct. 2849, 2860, 125 L. Ed. 2d 556 (1993) (overruling *Grady v. Corbin*, 495 U.S. 508, 110 S. Ct. 2084, 109 L. Ed. 2d 548 (1990), which had added to the same evidence test, and affirming *Blockburger* as the appropriate test).

Under the same evidence test, second degree felony murder and first degree manslaughter are not the same offense in law: each offense includes an element that is not included in the other. Manslaughter does not include as an element the underlying felony required to prove felony murder. The recklessness requirement of manslaughter is not an element of felony murder. But this does not end our inquiry.

C. Evidence of Contrary Legislative Intent

Although application of the *Blockburger* rule gives significant indicators of legislative intent, this test is not always dispositive of whether two offenses are the same. *See Calle*, 125 Wn.2d at 778, 780. The rule is not controlling where there is a "clear indication of contrary legislative intent." *Id.* at 778. But the rule establishes a presumption that may be overcome only by clear evidence of contrary intent. *See id.* at 780.

Schwab argues that we may find clear evidence that the legislature did not intend multiple punishments for one killing in the plain language of RCW 9A.32.010: under the definition of homicide, an unlawful homicide may be *either* murder *or* manslaughter. He urges that the legislature's intent is clear and overcomes the presumption accorded by the same evidence test.

Washington courts have on occasion found a violation of double jeopardy despite a determination that the offenses

at issue clearly involved different legal elements. *See State v. Johnson*, 92 Wn.2d 671, 679-80, 600 P.2d 1249 (1979) (examining convictions for first degree rape, first degree kidnapping, and first degree assault and striking the kidnapping and assault convictions even though the offenses involve different legal elements because the kidnapping and assault were incidental to, and elements of, the first degree rape), *disapproved of on other grounds, State v. Sweet*, 138 Wn.2d 466, 980 P.2d 1223 (1999); *State v. Potter,* 31 Wn. App. 883, 887-88, 645 P.2d 60 (1982) (concluding that convictions for reckless endangerment and reckless driving violated double jeopardy despite differing legal elements where the reckless endangerment conviction arose out of an act of reckless driving); *State v. Birgen*, 33 Wn. App. 1, 14, 651 P.2d 240 (1982) (holding that the legislature did not authorize convictions for third degree rape and statutory rape for a single act of sexual intercourse despite finding under the *Blockburger* test that the offenses are not the same).[2] The *Johnson* and *Birgen* courts relied on the historical development and legislative history of the statutes involved in arriving at their conclusions that the legislature did not intend multiple punishments.[3]

---

[2]The State asserts that the *Birgen* opinion has been criticized by the Washington Supreme Court in *Calle. See* 125 Wn.2d at 775. Although the *Calle* court corrected the *Birgen* court's assertion that non-double-jeopardy reasons existed for reviewing multiple punishments and clarified that the constitutional prohibition against double jeopardy is the only foundation for reviewing multiple punishments, the *Calle* court noted that the *Birgen* court did not actually enumerate its "non-double jeopardy" reasons for review. *See id.* The *Calle* court went on to conclude that the same evidence test is not always dispositive and discussed with approval the *Birgen* court's exploration of legislative history to determine whether the legislature authorized multiple punishments. *See id.* at 779-80.

[3]The current definitions of murder are not substantially different from the definitions in the 1909 criminal code, except that the 1909 code defined manslaughter as a catchall covering any unlawful homicide that was not murder. *See* 13A SETH A. FINE & DOUGLAS J. ENDE, WASHINGTON PRACTICE § 1507 (2d ed. 1998). At common law, murder and manslaughter are distinct offenses, and the presence of malice distinguishes murder from manslaughter. *See* 40 C.J.S. *Homicide* § 30 (1991). "Certain homicides constitute either murder or manslaughter, and this was also the rule at common law. Certainly, murder and manslaughter are kindred crimes which differ not in the kind or nature of the offense, but only in the degree, of the generic offense of felonious homicide. Thus, depending on the at-

Here, the State argues that the legislature intended multiple punishments because the felony murder and manslaughter statutes serve different purposes. The *Calle* court looked to the differing purposes served by the incest and rape statutes in concluding that the legislature intended to punish them as separate offenses. *See* 125 Wn.2d at 780.

Although addressing the different question of whether manslaughter is an inferior degree offense of murder, our Supreme Court's position in *State v. Tamalini*, 134 Wn.2d 725, 734, 953 P.2d 450 (1998) (quoting *Brandon v. Webb*, 23 Wn.2d 155, 160 P.2d 529 (1945)), provides instruction here:

> "While manslaughter is sometimes loosely spoken of as a degree of murder, it is actually not so, and has never been so denominated by any statute of this state. Although it is an included offense within the crime of murder, it is nevertheless a *distinct crime of itself.*"

And "manslaughter is not an inferior degree of felony murder simply because manslaughter and murder are both included in the statutory definition of homicide." *Id.* at 734-35. The *Tamalini* court found that the felony murder and manslaughter statutes are "directed to significantly differing conduct" and "proscribe separate and distinct offenses." *See* 134 Wn.2d at 733.

Next, the State argues that RCW 10.43.020 evinces legislative intent that double jeopardy be limited to cases of lesser-included and inferior-degree offenses:

> When the defendant has been convicted or acquitted upon an indictment or information of an offense consisting of different degrees, the conviction or acquittal shall be a bar to another indictment or information for the offense charged in the former, or for any lower degree of that offense, or for an offense necessarily included therein.

First and second degree manslaughter are not lesser-included or inferior-degree offenses of felony murder. *See Tamalini*, 134 Wn.2d at 730, 733.

tendant circumstances, an unlawful homicide may be either murder or manslaughter." *Id.* (footnotes omitted).

Finally, the State looks to the Sentencing Reform Act of 1981 (SRA) to find legislative intent to allow multiple punishments for the same criminal conduct:[4]

[I]f the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime. Sentences imposed under this subsection shall be served concurrently. . . . "Same criminal conduct," as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim.

RCW 9.94A.400(1)(a).

D. Other Jurisdictions

The Supreme Court of Connecticut found that convictions for felony murder and manslaughter in the first degree for a single homicide violate double jeopardy. *See State v. John*, 210 Conn. 652, 557 A.2d 93, 115 (1989). Under Connecticut's first degree manslaughter statute at the time, a person was guilty of that offense when the accused caused the death of another person (1) with intent to cause serious physical injury or (2) with intent to cause death under circumstances not constituting murder because the proscribed act was committed under influence of extreme emotional disturbance. *See* 557 A.2d at 96 n.4. Although the court recognized that under the *Blockburger* test double jeopardy was not violated, the court came to the contrary conclusion. *See id.* at 115. Based on the legislative history of felony murder, the court first concluded that intentional murder and felony murder are the same offense for double jeopardy purposes because the legislature

---

[4]We reject any argument that double jeopardy was not violated here because Schwab's sentences are to be served concurrently. Despite concurrent sentencing, the stigma and impeachment value of multiple convictions remain and constitute punishment. *See Calle*, 125 Wn.2d at 774. The Washington Supreme Court rejected the rule that double jeopardy is not violated where sentences are made to run concurrently and held that "double jeopardy may be implicated when multiple convictions arise out of the same act, even if concurrent sentences have been imposed." *See id.* at 775. Thus, although the SRA provision may provide some indication of legislative intent regarding multiple punishments, concurrent sentencing does not resolve the double jeopardy question.

intended only one punishment for a single homicide even if the homicide violated two separate statutory provisions. *See id.* The court then extended this reasoning to conclude that felony murder and manslaughter in the first degree are the same offense for double jeopardy purposes because these offenses are all homicide offenses as statutorily defined. *See id. See also State v. Chicano,* 216 Conn. 699, 584 A.2d 425, 431 (1990) (concluding that convictions for felony murder and first degree manslaughter for a single homicide violate double jeopardy for either prong of the first degree manslaughter statute).

But the Wisconsin Supreme Court, after analysis of the *Blockburger* test and other factors including the language of the statutes, the legislative history, the nature of the proscribed conduct, and the appropriateness of multiple punishments, concluded that its legislature intended to allow multiple convictions and punishments for second-degree reckless homicide and homicide by intoxicated use of a vehicle arising out of a single homicide. *See State v. Lechner,* 217 Wis. 2d 392, 576 N.W.2d 912, 922 (1998). In another case, the Fifth Circuit, after finding no express legislative intent in the words of the statutes or the legislative history, held under *Blockburger* that double jeopardy was not offended by two convictions, arising out of one attempt to kill a single person, for (1) attempting to kill a person to prevent his attendance at an official proceeding and (2) attempting to kill a person to prevent his communication of information relating to the commission of a federal offense. *See United States v. Galvan,* 949 F.2d 777, 782 (5th Cir. 1991).

E. The Legislature Did Not Intend Multiple Punishments for a Single Homicide

█ We conclude that convictions for both second degree felony murder and first degree manslaughter for a single homicide violate state and federal constitutional guarantees against double jeopardy. Schwab's argument based on the disjunctive definition of homicide is persuasive: one killing equals one homicide; one unlawful homicide equals *either*

murder, homicide by abuse, *or* manslaughter. From this we find that the legislature did not intend to provide multiple punishments for a single homicide.

We also note that although second degree felony murder does not require recklessness, facts supporting second degree felony murder, especially where based on assault, will often support recklessness and thus manslaughter. Punishment for felony murder suffices for a single killing where manslaughter is also proven.

Further, there is no sound policy reason to impose multiple punishments for second degree felony murder and first degree manslaughter. Although the offenses are directed at differing conduct, they both proscribe generally the killing of another human being. *See Tamalini,* 134 Wn.2d at 733. We find that *Tamalini* does not control our double jeopardy question because it does not address the issue of whether the legislature intended multiple punishments for these offenses. Punishment above that for a felony is imposed on those who kill while engaged in committing the felony even absent the intent to kill because a life has been taken. Likewise, punishment is imposed on those who kill while engaged in reckless conduct absent an intent to kill because a life has been taken. Thus, although the conduct is different, the purposes underlying the punishments are similar.

## F. We Need Not Address Schwab's Instructional Challenge

We need not address Schwab's challenge to the trial court's refusal to instruct on second degree manslaughter because the jury convicted Schwab of second degree felony murder, the conviction for which stands; and we have no doubt that an instruction on second degree manslaughter would have had no impact on the conviction here for felony murder. And there is no longer any reason to give the jury a choice between first and second degree manslaughter because under an extension of our holding, Schwab may

not be convicted of both second degree felony murder and second degree manslaughter.

## CONCLUSION

We hold that convictions for both second degree felony murder and first degree manslaughter for a single homicide violate state and federal constitutional guarantees against double jeopardy. We affirm Schwab's conviction and sentence for second degree felony murder and vacate his conviction and sentence for first degree manslaughter.

COLEMAN and BAKER, JJ., concur.