# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  47835-8-II |
| Respondent, | |
| v. | |
| EDWARD JAMES WILKINS, | PUBLISHED OPINION |
| Appellant. | |

JOHANSON, J. — Edward Wilkins appeals his first degree child rape and first degree child molestation convictions.  He contends that the convictions violate double jeopardy principles and that the State is judicially estopped from arguing otherwise.  He further argues that the trial court should have redacted the victim's video statement, he was denied effective assistance of counsel, and he was denied a fair trial based on prosecutorial misconduct during closing argument.  We affirm.

## FACTS

In 2008, after living together for several months, Wilkins and NH's mother married.  Wilkins cared for NH while NH's mother was at work.

In March 2008, when NH was three years old, NH reported stomach pains to her mother.  A week later, NH reported that her "privates hurt."  2B Report of Proceedings (RP) at 370.  On March 16, 2008, accompanied by Wilkins, NH's mother took NH to the hospital.  Wilkins was

asked to leave the examination room. At this time, the medical staff informed NH's mother that there were signs of penetration and that NH had a blister on her genitalia. NH tested positive for herpes simplex virus 2, also known as genital herpes. Genital herpes is passed on by genital-to-genital contact. NH's mother tried to discuss the matter with Wilkins, but he would change the subject and get angry. Wilkins eventually moved out of the home, and NH's mother relocated to Idaho with NH.

In 2011, NH began having nightmares about Wilkins and would wet her bed. NH's mother took NH to see a counselor. NH was interviewed by a forensic interviewer in Idaho in 2011. When the interviewer asked about inappropriate touching, NH stated that she did not "'want to talk about that.'" 2B RP at 407.

A different interviewer met with NH in 2014, when NH was almost 10 years old. During the videotaped interview, NH was reluctant to speak, told the interviewer she was embarrassed, and cried. The interviewer asked NH about Wilkins. NH stated, "Well, he is a bad, bad, bad, bad person. . . . He does bad things to kids, very bad things to kids." 2A RP at 301-02. NH then stated that Wilkins had "probably done it to littler kids . . . or bigger. That's all I know about him." 2A RP 303-04.

NH then described an incident when Wilkins and her mom were still married where she was playing in the living room with her siblings and Wilkins took her into his bedroom. NH disclosed that Wilkins then told her to take off her pants and underwear. Wilkins then had NH get on the bed, and he got on top of her. NH disclosed that Wilkins then "'humped'" her; NH explained that by this she meant his "bad spot . . . [w]ent up mine." 2B RP at 415, 421. NH identified

Wilkins's "bad spot" as his penis. 2B RP at 423. NH then indicated that "'up mine'" referred to her vagina. 2B RP at 424.

Detective Charles Meadows reviewed Wilkins's medical records. The records showed that Wilkins had been diagnosed with genital herpes.

The State charged Wilkins by amended information with first degree child rape and first degree child molestation. During the hearing on the motion to amend the information, the prosecutor stated, "I think if the jury were to find him guilty on both counts, then the Court would then throw out the lower count. I think that's how it's done." 2A RP at 233. The prosecutor continued, "I think if you have two . . . then the lesser one goes away. So we do that with the understanding that if they find him guilty of both, the Court would be dismissing the child molest in the first degree at some point, or --." 2A RP at 233. The trial court then asked another question, and the prosecutor did not finish his sentence.

When the judge questioned the prosecutor more about the amendment, the prosecutor stated, "The -- especially in light of the testimony at the *Ryan*[1] hearing, I think the Child Molest 1 charge is appropriate. I think the evidence would definitely support that, as well as Rape of a Child 1. And so, I think because of that, this is an appropriate amendment to the charge." 2A RP at 234.

After a pretrial *Ryan* hearing, the trial court granted the State's motion to allow the jury to view NH's videotaped 2014 interview. The trial court ordered that the entire interview be played so that the jury would be given the opportunity to fully evaluate NH's credibility.

---

[1] *State v. Ryan*, 103 Wn.2d 165, 691 P.2d 197 (1984); RCW 9A.44.120.

During trial, Detective Meadows testified that when he questioned Wilkins about his genital herpes, Wilkins stated that the diagnosis "wasn't enough evidence." 2B RP at 515. NH also testified. She testified that Wilkins got on top of her in the bed, his "bad spot" touched hers, and then his "bad spot" went inside her. 2A RP at 349.

The State filed a motion to admit evidence of Wilkins's prior child rape and child molestation convictions under ER 404(b). The trial court denied the State's request, finding that the evidence did not possess the substantially high degree of similarity required for admission as a common plan or scheme.

Wilkins then pointed out that NH's comments about Wilkins doing bad things to children during the forensic interview "may be contradictory" to the trial court's ER 404(b) ruling. 2A RP at 267. Wilkins agreed that "admissibility" may depend on how the trial court classifies the statements. The trial court distinguished NH's statements from the previously excluded prior bad act evidence by explaining that it was understandable that a child her age who believed she was hurt by a person would also believe that person would be a bad person, who did bad things to others.

During closing, the prosecutor argued, without objection, that Wilkins made an incriminating statement to Detective Meadows. The prosecutor told jurors that saying "'[t]hat's not enough evidence'" is different than saying "'I didn't do it.'" 2C RP at 558. The prosecutor continued, "A detective is talking to you about an investigation and he points this fact out, and your response . . . is, 'That's not enough evidence.' That's a pretty incriminating statement." 2C RP at 558-59.

4

In rebuttal closing, the prosecutor addressed Wilkins's reliance on NH telling the interviewer in 2011 that she did not want to discuss Wilkins. The prosecutor stated, "It's not really a fair fight for a defense attorney to parse out a child's words with such great specificity. . . . She's only in the fifth grade." 2C RP at 600-01. The prosecutor went on to argue that asking NH more questions would be difficult because "[y]ou know, [NH] had to get in here and testify, at ten years old, about being raped, in front of the man who did it. How difficult would that be? So [d]efense complains we didn't ask her about her nightmares she was having about it. I think she was in here for long enough." 2C RP at 606. Wilkins did not object to these statements.

The jury found Wilkins guilty as charged. At sentencing, the prosecutor stated, "The parties agree, we did at the time and we continue to, that that was same criminal conduct, it was based on one act that the victim testified to, so they should not count against each other on the offender score. He should be sentenced for both, he was convicted of both, but they're same criminal conduct." 2C RP at 631. The trial court agreed with both parties that the two offenses comprised the same criminal conduct, calculated Wilkins's offender score by counting the offenses as one crime, and sentenced him to 300 months on the rape conviction and 198 months on the molestation conviction, to be served concurrently. Wilkins appeals.

## ANALYSIS

### I. DOUBLE JEOPARDY

#### A. JUDICIAL ESTOPPEL

We first address whether the State is judicially estopped from arguing that the rape and molestation convictions do not violate double jeopardy principles based on the prosecutor's

statements at the hearing to amend the information.[2] The State asserts that the judicial estoppel elements have not been established. We agree.

When deciding the applicability of judicial estoppel, we focus on three factors: (1) whether the party's later position is clearly inconsistent with its earlier position, (2) whether accepting the new position would create the perception that a court was misled, and (3) whether a party would gain an unfair advantage from the change. *Miller v. Campbell*, 164 Wn.2d 529, 539, 192 P.3d 352 (2008).

During the hearing on the motion to amend the information, the prosecutor stated, "I think if the jury were to find him guilty of both counts, then the Court would then throw out the lower count. I think that's how it's done." 2A RP at 233. The prosecutor continued, "I think if you have two . . . then the lesser one goes away. So we do that with the understanding that if they find him guilty of both, the Court would be dismissing the child molest in the first degree at some point, or --." 2A RP at 233. The trial court then asked another question, and the prosecutor did not finish his sentence.

1.      CLEARLY INCONSISTENT

The prosecutor stated twice "I think" the molestation would be dismissed. 2A RP at 233. The prosecutor also stated that if the jury finds Wilkins guilty of rape and molestation, "the Court would be dismissing the child molest in the first degree at some point, or --" 2A RP at 233. The judge then asked another question, and the prosecutor did not finish his sentence. These less-than-certain statements show that the prosecutor was not certain of the result if the jury found Wilkins

---

[2] At our request, the parties provided additional briefing on this issue.

guilty of both offenses. As such, Wilkins cannot show that the prosecutor took a later position that was "'clearly inconsistent'" with his earlier position. *Miller*, 164 Wn.2d at 539 (internal quotation marks omitted) (quoting *Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 538, 160 P.3d 13 (2007)).

2.    MISLEADING THE TRIAL COURT

For the same reasons that Wilkins cannot show that the prosecutor took a "'clearly inconsistent'" statement, his statements do not create the perception that the trial court was misled. *Miller*, 164 Wn.2d at 539 (internal quotation marks omitted) (quoting *Arkison*, 160 Wn.2d at 538). As the State points out, judicial estoppel is available only when the trial court adopted the inconsistent claim or position, either as a preliminary matter or as part of a final disposition. *Taylor v. Bell*, 185 Wn. App. 270, 282-83, 340 P.3d 951 (2014). Here, the trial court did not adopt the State's statement and dismiss the lesser charge; rather, the trial court chose not to dismiss the molestation conviction and instead counted the rape and molestation convictions as one point for offender score calculation purposes.

3.    UNFAIR ADVANTAGE

The unfair advantage factor may weigh in favor of Wilkins. The State was able to receive a favorable ruling from the trial court potentially based on its argument that it believed one of the convictions would be dismissed. Ultimately, the trial court allowed both convictions. While the trial court counted them as one point for sentencing purposes, the molestation conviction is still included in Wilkins's criminal history. In this sense, the inclusion of the molestation conviction in Wilkins's criminal history could be disadvantageous to Wilkins. Nevertheless, a judicial estoppel claim requires a showing of all elements. *Miller*, 164 Wn.2d at 539. Since all judicial

estoppel elements are not established, judicial estoppel does not preclude the State from arguing on appeal that the convictions do not violate double jeopardy principles.

## B. DOUBLE JEOPARDY IS NOT VIOLATED

Wilkins next argues that his first degree child rape and first degree child molestation convictions violate the prohibition against double jeopardy because the convictions constitute the same offense. We disagree.

"The double jeopardy clauses of the Fifth Amendment to the United States Constitution and article I, section 9 of the Washington Constitution prohibit the imposition of multiple punishments for a single offense." *State v. French*, 157 Wn.2d 593, 612, 141 P.3d 54 (2006). "The legislature is tasked with defining criminal offenses, and the prohibition on double jeopardy imposes '[f]ew, if any, limitations' on that power." *State v. Villanueva-Gonzalez*, 180 Wn.2d 975, 980, 329 P.3d 78 (2014) (quoting *Sanabria v. United States*, 437 U.S. 54, 69, 98 S. Ct. 2170, 57 L. Ed. 2d 43 (1978)). "A 'defendant's double jeopardy rights are violated if he or she is convicted of offenses that are identical both in fact and in law.'" *State v. Fuentes*, 179 Wn.2d 808, 824, 318 P.3d 257 (2014) (quoting *State v. Calle*, 125 Wn.2d 769, 777, 888 P.2d 155 (1995)). If, however, each charged offense includes elements not included in the other, then the offenses are different and there is no double jeopardy violation. *Fuentes*, 179 Wn.2d at 824. We review double jeopardy claims de novo. *Villanueva-Gonzalez*, 180 Wn.2d at 979-80.

We begin by addressing the distinction between merger and same criminal conduct. Merger is a doctrine that courts use to avoid violating a defendant's double jeopardy rights. "Under the merger doctrine, when the degree of one offense is raised by conduct separately criminalized by the legislature, we presume the legislature intended to punish both offenses through a greater

8

sentence for the greater crime." *State v. Freeman*, 153 Wn.2d 765, 772-73, 108 P.3d 753 (2005). Therefore, at sentencing, trial courts merge crimes to avoid doubly punishing behavior. *State v. Whittaker*, 192 Wn. App. 395, 410-11, 367 P.3d 1092 (2016).

"Same criminal conduct" is a doctrine sentencing courts use when calculating a defendant's offender score. *State v. Graciano*, 176 Wn.2d 531, 535-36, 295 P.3d 219 (2013). Under former RCW 9.94A.589(1)(a) (2002), two or more crimes encompass the same criminal conduct if they entail "the same criminal intent, are committed at the same time and place, and involve the same victim." If a sentencing court makes a finding that some or all of the current offenses encompass the same criminal conduct, "then those current offenses shall be counted as one crime. Sentences imposed under this subsection shall be served concurrently." Former RCW 9.94A.589(1)(a). Accordingly, the sentencing court's finding that Wilkins's rape and molestation convictions are the same criminal conduct for calculating Wilkins's offender score is distinct from the question of whether the two offenses merge. But merger and same criminal conduct doctrines do not affect the underlying convictions' validity. *See State v. Tili*, 139 Wn.2d 107, 128, 985 P.2d 365 (1999); former RCW 9.94A.589(1)(a).

To determine whether multiple convictions violate the prohibition against double jeopardy, we first examine the language of the applicable statutes. *State v. Hughes*, 166 Wn.2d 675, 681, 212 P.3d 558 (2009). If the statutes do not expressly allow for multiple convictions arising from the same act, we next determine whether two statutory offenses are the same in law and in fact. *Calle*, 125 Wn.2d at 777. If each offense includes elements not included in the other, the offenses are different and a presumption arises that the legislature intended to allow multiple punishments for the same act. *Calle*, 125 Wn.2d at 777.

An individual is guilty of first degree child rape "when the person has sexual intercourse with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least twenty-four months older than the victim." RCW 9A.44.073(1). An individual is guilty of first degree child molestation "when the person has, or knowingly causes another person under the age of eighteen to have, sexual contact with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.083(1). "'Sexual contact'" is "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party." RCW 9A.44.010(2).

Neither the first degree child rape statute nor the first degree child molestation statute expressly authorizes multiple convictions for offenses arising out of a single act. We next look to whether the two statutory offenses are the same in law and in fact.

"[O]ffenses are not constitutionally the same if there is any element in one offense not included in the other and proof of one offense would not necessarily prove the other." *State v. Trujillo*, 112 Wn. App. 390, 410, 49 P.3d 935 (2002) (citing *Calle*, 125 Wn.2d at 777-78). Under the Washington rule, double jeopardy attaches only if the offenses are identical in both law and fact, which is demonstrated when "'the evidence required to support a conviction upon one of them would have been sufficient to warrant a conviction upon the other.'" *State v. Reiff*, 14 Wash. 664, 667, 45 P. 318 (1896) (quoting *Morey v. Commonwealth*, 108 Mass. 433, 434 (1871)).

Several courts have held that a single incident may support rape and molestation convictions under RCW 9A.44.073(1) and .083(1). For instance, in *State v. Land*, 172 Wn. App. 593, 600, 295 P.3d 782 (2013), Division One of this court held, "Where the only evidence of sexual intercourse supporting a count of child rape is evidence of penetration, rape is not the same offense

10

as child molestation." This is the case "even if the penetration and molestation allegedly occur during a single incident of sexual contact between the child and the older person." *Land*, 172 Wn. App. at 600. Moreover, child molestation is not a lesser-included offense of child rape. *French*, 157 Wn.2d at 610-11. A conviction for both child molestation and child rape does not violate double jeopardy even if they occur during a single incident. *French*, 157 Wn.2d at 611.

Another instance is found in *State v. Jones*, where the victim testified to sexual contact with the defendant on one occasion. 71 Wn. App. 798, 822, 863 P.2d 85 (1993). Based upon that single incident, the jury convicted Jones of both child rape and molestation. *Jones*, 71 Wn. App. at 806. Division One of this court rejected Jones's double jeopardy claim, holding that first degree child rape and first degree child molestation are not the same offense for double jeopardy purposes: "Child molestation requires that the offender act for the purpose of sexual gratification, an element not included in first degree rape of a child, and first degree rape of a child requires that penetration or oral/genital contact occur, an element not required in child molestation." *Jones*, 71 Wn. App. at 825 (footnotes omitted).

NH testified that Wilkins had NH take off her clothes and get on the bed. He then got on top of NH and his "bad spot" touched hers. 2A RP at 349. Wilkins's penis then penetrated NH's vagina. The molestation occurred when Wilkins had sexual contact with NH for sexual gratification; the rape occurred when there was penetration. Thus, the facts support the elements of both molestation and rape. Based on *Land*, *Jones*, and *French*, the jury's finding that Wilkins was guilty of both molestation and rape does not violate double jeopardy even though the offenses stem from a single incident. Moreover, because first degree child rape requires proof of sexual

intercourse and first degree molestation requires proof of sexual contact, the two offenses require proof of a fact that the other does not.

Because each offense includes elements not included in the other, the offenses are not the same offense and a presumption arises that the legislature intended to allow multiple punishments for the same act. *Calle*, 125 Wn.2d at 777. Thus, unless Wilkins rebuts this presumption, there is no double jeopardy violation. *Calle*, 125 Wn.2d at 777.

### C. WILKINS FAILS TO REBUT THE *CALLE* PRESUMPTION

Wilkins fails to rebut the presumption that the legislature intended to punish child rape and child molestation separately. Wilkins points to the prosecutor's acquiescence that the crimes involved the same criminal conduct. But a same criminal conduct claim is distinct from a double jeopardy violation claim. We note that the sentencing court found both offenses involved the same criminal conduct for offender score calculation purposes. This finding does not impact our analysis above regarding double jeopardy and the merger doctrine. *See Tili*, 139 Wn.2d at 121 (defendant's three rape convictions did not merge, but the convictions involved the same criminal conduct and therefore counted as one crime for sentencing purposes); David Boerner, *Sentencing In Washington* § 5.8(a), at 5-16 (1985) (offenses that do not merge may still constitute the same criminal conduct as envisioned by former RCW 9.94A.400(1)(a)[3]).

To the extent that Wilkins or the dissent relies on the State's acquiescence and the trial court's finding that Wilkins's conduct constitutes the same criminal conduct, this reliance is misplaced. Dissent at 23. The State's acquiescence is not evidence of legislative intent to disallow

---

[3] Recodified at former RCW 9.94A.589(1)(a).

multiple punishment for the same act and a same criminal conduct analysis is distinct from a double jeopardy analysis. *Tili*, 139 Wn.2d at 119 n.5.

We next turn to arguments addressed in the dissent. To support its double jeopardy conclusion, the dissent cites to distinguishable cases: *State v. Potter*, 31 Wn. App. 883, 645 P.2d 60 (1982); *State v. Schwab*, 98 Wn. App. 179, 988 P.2d 1045 (1999); *Freeman*, 153 Wn.2d at 774, and *Hughes*, 166 Wn.2d at 683-84. Dissent at 25-26. In *Schwab*, *Freeman*, and *Hughes*, the holdings rest on a clear indicia of legislative intent to preclude multiple punishments for a single incident sufficient to overcome a *Calle* presumption. *Potter* is unique in that the court overlooked clear indicia of contrary legislative intent by an improper application of the *Blockburger* test.[4]

*Potter* involved consecutive sentences for reckless driving and reckless endangerment. 31 Wn. App. at 884. In *Potter*, this court declined to impose multiple punishments, citing the rule of lenity and criticizing the *Blockburger* test for producing unclear indicia of legislative intent. 31 Wn. App. at 887-88. The *Potter* court specifically took issue with the fact that the outcome of a *Blockburger* analysis varied based on theoretical facts. 31 Wn. App. at 887.

But significantly, *Potter* has been criticized in subsequent cases for applying theoretical facts to the *Blockburger* test. *See, e.g.*, *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 820, 100 P.3d 291 (2004) ("[T]he . . . *Potter* court[ ] could have found a double jeopardy violation by applying the 'same elements' test, for double jeopardy will be violated where '*the evidence*

---

[4] Courts may discern the legislature's purpose by applying the test set forth in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). Under *Blockburger*, "[t]he applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304.

*required* to support a conviction upon one of [the charged crimes] would have been sufficient to warrant a conviction upon the other.'" (some alterations in original; internal quotation marks omitted) (quoting *Reiff*, 14 Wash. at 667)). This criticism suggests that had the *Potter* court properly applied the *Blockburger* test, it could have reached the same result.

Moreover, in conducting a *Blockburger* analysis, we consider the elements of the crimes *as charged and proved*, not merely based on an abstract articulation of the elements. *Freeman*, 153 Wn.2d at 777. As such, the dissent's reliance on *Potter* is unwarranted. Dissent at 26.

At issue in *Schwab* were convictions for second degree felony murder and first degree manslaughter. 98 Wn. App. at 180. The court noted the existence of the *Blockburger* rule, but declined to follow it having found evidence of contrary legislative intent. *Schwab*, 98 Wn. App. at 184 ("The [*Blockburger*] rule is not controlling where there is a 'clear indication of contrary legislative intent.'") (quoting *Calle*, 125 Wn.2d at 778). RCW 9A.32.010 defines homicide as either murder, homicide by abuse, manslaughter, excusable homicide, or justifiable homicide. The court concluded that, based on this definition, the legislature intended only one punishment for one homicide. *Schwab*, 98 Wn. App. at 188-89 ("one unlawful homicide equals *either* murder, homicide by abuse, *or* manslaughter"). Since *Schwab*'s holding was based on a clear indication of contrary legislative intent to punish only once for a single homicide, the court was justified in not relying on *Blockburger* for its analysis. Here, we lack such clear indication of contrary legislative intent.

In *Freeman*, the court declined to perform a *Blockburger* analysis because the parties agreed that the crimes were not the same at law, and the court resolved the double jeopardy issue on other grounds. 153 Wn.2d at 777. Notably, the *Freeman* court found a *Blockburger* analysis

unnecessary because the discrepancy in the lengths of the sentences was a clear indication of legislative intent not to merge robbery and assault. 153 Wn.2d at 777-78. "[The defendant] received a standard range sentence of 54 months on the 'greater' robbery conviction and 17 months for the 'lesser' assault conviction, to be served concurrently. Accordingly, we conclude that there is evidence that the legislature did intend to punish first degree assault and robbery separately." *Freeman*, 153 Wn.2d at 776. The court reasoned that a *Blockburger* analysis was irrelevant only where legislative intent was clearly established by other means. *Freeman*, 153 Wn.2d at 777. This is distinct from the case at bar, where no clear evidence of legislative intent has been proffered.

The dissent also cites *Freeman* for the proposition that the establishment of independent purposes for the crimes committed can be used to discern legislative intent. Dissent at 26. We do not agree that the independent purpose test is used to discern legislative intent. *Freeman* defines the independent purpose test as an exception when another test suggests that the legislature precluded multiple punishments for a particular set of crimes. 153 Wn.2d at 778 ("[W]e turn to a well established exception that may operate to allow two convictions *even when they formally appear to be the same crime* under other tests." (emphasis added)). Here, however, we have two crimes that *do not* formally appear to be the same in law—they do not pass the *Blockburger* test. Therefore, the independent purpose exception does not apply.

Lastly, the *Hughes* court found a double jeopardy violation despite finding that second degree rape and second degree rape of a child did not meet the "same elements" test. 166 Wn.2d at 683-84. The *Hughes* court held that the unique elements had an identical purpose (establishment of "nonconsent") and thus effectively met the "same elements" test. 166 Wn.2d at 684. The court concluded that "the two offenses are the same in fact because they arose out of one act of sexual

intercourse with the same victim. . . . Although the elements of the crimes facially differ, both statutes require proof of nonconsent because of the victim's status." *Hughes*, 166 Wn.2d at 684.

There has been no attempt by Wilkins to demonstrate that sexual intercourse and sexual contact involve an identical purpose such that the two statutory elements are effectively the same. Thus, the dissent's reliance on *Hughes* is misplaced. Dissent at 25-26.

Finally, although the dissent purports to rely on legislative intent, there is only one explicit reference to that intent. Dissent at 27. Citing *Hughes*, the dissent claims that "our legislature's intent is to preclude multiple punishments for crimes arising out of one act of sexual intercourse." Dissent at 29. This is broader than the holding of the *Hughes* court. The *Hughes* court was careful to narrow the scope of their holding to preclude multiple punishments only for second degree rape and second degree rape of a child. 166 Wn.2d at 684 ("The legislature's intent to preclude multiple punishments *for the crimes of rape and rape of a child* arising out of one act of sexual intercourse is confirmed." (emphasis added)). *Hughes*' preclusion of multiple punishments for second degree rape and second degree rape of a child is not evidence of legislative intent to preclude multiple punishments for child rape and child molestation. Moreover, the *Hughes* court was careful to note that the fact that the offenses arose out of one act only makes the offenses the same in fact, not necessarily in law. 166 Wn.2d at 684 ("Here, the two offenses are the same *in fact* because they arose out of one act of sexual intercourse with the same victim. Here, both offenses are also the same *in law*." (emphasis added; footnote omitted)).

As such, *Hughes* does not support the proposition that our legislature intends to preclude multiple punishments for *all* crimes arising out of one act of sexual assault, and the dissent's

16

reliance on this statement as clear evidence of contrary legislative intent is unpersuasive. Dissent at 27.

The cases cited by the dissent are distinguishable and, here, there is no evidence of contrary legislative intent necessary to rebut the presumption that child rape and child molestation do not implicate double jeopardy.[5]

Thus, because rape of a child and child molestation have different elements and because the presumption that the legislature intended to allow separate punishment for each crime is unrebutted, we conclude that Wilkins's convictions for first degree rape of a child and first degree child molestation do not violate double jeopardy.

### III. VIDEO STATEMENTS

Wilkins next contends that NH's statements during the videotaped 2014 interview that Wilkins does bad things to children should have been redacted from the video before it was played to the jury. We disagree.

As an initial matter, the State argues that this issue was not preserved for appeal. However, during trial, defense counsel pointed out that NH's comments during the 2014 interview "may be contradictory" to the court's ER 404(b) ruling. 2A RP at 267. Defense counsel acknowledged that "admissibility" may depend on how the trial court classifies the statements. The trial court

---

[5] The dissent states that it is undisputed that the crimes here constitute the same criminal conduct and that, under *Hughes*, the legislature intended to preclude multiple punishments for sex crimes that involve "the same act, the same intent, the same victim, and the same temporal period." Dissent at 29. However, these factors are the same factors that determine whether two crimes are the same criminal conduct. *See* former RCW 9.94A.589(1)(a). This misconstrues the concepts of same criminal conduct and double jeopardy by suggesting that a finding of same criminal conduct can itself be indicative of legislative intent to preclude multiple punishments.

distinguished NH's statements from the previously excluded prior bad act evidence. Because Wilkins voiced his objection and the trial court made a ruling on the objection, this issue is sufficiently preserved for our review.

We review evidentiary rulings for an abuse of discretion. *State v. Ohlson*, 162 Wn.2d 1, 7-8, 168 P.3d 1273 (2007). A trial court abuses its discretion if the decision is manifestly unreasonable or based on untenable grounds. *State v. Thurlby*, 184 Wn.2d 618, 624, 359 P.3d 793 (2015).

Here, Wilkins agreed that admissibility may depend on how the trial court classifies the statements. The trial court then distinguished NH's statements from the previously excluded prior bad act evidence by explaining that it was understandable that a child her age who believed she was hurt by a person would also believe that person would be a bad person, who did bad things to others. Because the trial court ruled the statements were not evidence of any prior bad act, but only of NH's state of mind, globalizing to others the harm that had come to her, ER 404(b) was not implicated.

When testimony is not offered to show the defendant's propensity for violence but instead shows the victim's state of mind, such evidence is not subject to ER 404(b). *State v. Lopez*, 142 Wn. App. 341, 355, 174 P.3d 1216 (2007). Here, due to the context, lack of specificity, and equivocal nature of the statements, and the ambiguous nature of Wilkins's objection (which called for the trial court to classify the statements), it was not manifestly unreasonable for the trial court to interpret these statements as going to NH's state of mind, thus providing tenable grounds for the trial court to allow the videotaped interview to go to the jury without redaction. The trial court did not abuse its discretion.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Wilkins next contends that he was denied effective assistance of counsel because defense counsel did not object to the admission of exhibit 3, which Wilkins contends is his medical records from a correctional facility. Wilkins contends that these records were admitted contrary to the trial court's ER 404(b) ruling. Exhibit 3, however, is the videotape of NH's 2014 interview. There were no medical record exhibits admitted during trial. Thus, Wilkins's ineffective assistance of counsel claim fails.

### IV. PROSECUTORIAL MISCONDUCT

Wilkins's next contention centers upon allegations that the prosecutor committed misconduct in closing argument. Because Wilkins does not show improper conduct, the argument fails.

#### A. COMMENT ON EXERCISE OF CONSTITUTIONAL RIGHT

Wilkins first argues that the prosecutor committed misconduct by improperly commenting on Wilkins's pretrial statement that his genital herpes diagnosis "wasn't enough evidence." 2B RP at 515. He alleges this affected his right to a jury trial because the prosecutor invited the jury to infer that Wilkins was guilty. We disagree.

Criminal defendants have a constitutional right to a jury to decide their guilt under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. Because "[a] criminal defendant's assertion of his constitutionally protected due process rights is not evidence of guilt," courts have long held that the State may not "invite a jury to infer that a defendant is more likely guilty because he exercised his constitutional rights." *State v. Silva*, 119 Wn. App. 422, 428-29, 81 P.3d 889 (2003).

Here, the prosecutor commented on Wilkins's statement to Detective Meadow, stating, "'[T]hat's not enough evidence' . . . is a different thing than saying, 'I didn't do it.'" 2C RP at 558. The prosecutor continued, "A detective is talking to you about an investigation and he points this fact out, and your response . . . is, 'That's not enough evidence.' That's a pretty incriminating statement." 2C RP at 558-59.

The issue here is whether the prosecutor manifestly intended the remarks to be a comment on Wilkins's right to a jury. *See State v. Crane*, 116 Wn.2d 315, 331, 804 P.2d 10 (1991), *overruled on other grounds by In re Pers. Restraint of Andress*, 147 Wn.2d 602, 56 P.3d 981 (2002). It would be a stretch to conclude that the prosecutor was commenting on Wilkins's exercise of his right to a jury trial. From the record, we cannot say there was such an intent. The statement of the prosecutor, standing alone, was "'so subtle and so brief that [it] did not naturally and necessarily emphasize'" Wilkins's exercise of his right to a jury. *Crane*, 116 Wn.2d at 331 (alteration in original) (internal quotation marks omitted) (quoting *State v. Crawford*, 21 Wn. App. 146, 152, 584 P.2d 442 (1978)). But even assuming the comment related to this right, not all arguments touching upon a defendant's constitutional rights are impermissible comments on the exercise of those rights; rather, a prosecutor is allowed wide latitude in closing arguments to draw reasonable inferences from the facts in evidence and to express such inferences to the jury. *State v. Dhaliwal*, 150 Wn.2d 559, 577, 79 P.3d 432 (2003).

Viewing the prosecutor's statements in the context of the entire record, the prosecutor's remarks were not intended to comment on Wilkins's exercise of his constitutional right to a jury. The prosecutor properly commented on admissible testimony by the defendant. Wilkins fails to show prosecutorial misconduct.

## B. APPEAL TO PASSION AND PREJUDICE

Wilkins next argues that the prosecutor committed misconduct by appealing to the jurors' passion and prejudice by commenting on the victim's age and that it was not fair for defense counsel to attack the victim. We disagree.

In closing arguments, attorneys have "'latitude to argue the facts in evidence and reasonable inferences.'" *Dhaliwal*, 150 Wn.2d at 577 (quoting *State v. Smith*, 104 Wn.2d 497, 510, 707 P.2d 1306 (1985)). They may not, however, make mere appeals to the jury's passion or prejudice. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 711, 286 P.3d 673 (2012).

In rebuttal closing, the prosecutor addressed defense counsel's reliance on NH telling the interviewer in 2011 that she did not want to discuss Wilkins. The prosecutor stated, "It's not really a fair fight for a defense attorney to parse out a child's words with such great specificity. . . . She's only in the fifth grade." 2C RP at 600-01. The prosecutor went on to argue that asking NH more questions would be difficult because "[y]ou know, [NH] had to get in here and testify, at ten years old, about being raped, in front of the man who did it. How difficult would that be? So Defense complains we didn't ask her about her nightmares she was having about it. I think she was in here for long enough." 2C RP at 606.

The prosecutor's statements that Wilkins now claims were misconduct were not improper because they reasonably responded to defense counsel's attack on NH's delay in reporting the 2008 incident. Comments on what NH was capable of, given her age, were reasonable inferences from the record. Thus, Wilkins fails to show prosecutorial misconduct on this allegation as well.

## V. APPELLATE COSTS

Wilkins opposes appellate costs, asserting that he does not have the ability to pay. A commissioner of this court will consider whether to award appellate costs in due course under RAP 14.2 if the State decides to file a cost bill and if Wilkins objects to that cost bill.

We affirm.

JOHANSON, J.

I concur:

BJORGEN, C.J.

No. 47835-8-II

MELNICK, J. (dissenting in part) — I believe that when the State moved to amend the information to add a count of child molestation it correctly conceded to the trial court that if a jury convicted Edward Wilkins of both rape of a child in the first degree and child molestation in the first degree, that the latter charge should be dismissed. The State based its concession on the fact that both convictions encompassed one act and that the molestation was incidental to the rape. Double jeopardy principles preclude multiple punishments for the same act, and I respectfully dissent solely on this issue.

Wilkins sexually assaulted his step-daughter. The assault occurred when Wilkins got on top of NH, touched his "bad spot" to hers, and then inserted his "bad spot" inside her. 2A Report of Proceedings (RP) at 349.

For this heinous act, the State charged Wilkins with rape of a child in the first degree. On the day of trial, the State moved to amend the information to add a count of child molestation in the first degree. Wilkins opposed the motion. The State conceded that the charges arose out of the same act. The State also conceded and represented to the trial court that if the jury found Wilkins guilty of both charges, "the Court would be dismissing the child molest in the first degree." 2A RP at 233. The trial court allowed the State to add the charge.

After the jury returned convictions on both counts, the State told the trial court that both charges were based "on one act"; however, the State did not agree to dismiss the child molestation charge. 2C RP at 631. Rather, the State argued that the charges constituted the same criminal

23

conduct.[6] On this point, the trial court agreed. The trial court sentenced Wilkins on both charges, concurrent with each other.

Wilkins appealed, claiming that his sentences on both offenses violated double jeopardy.[7]

"The double jeopardy clauses of the Fifth Amendment and Const. art. 1, § 9 protect a defendant against multiple punishments for the same offense." *State v. Calle*, 125 Wn.2d 769, 772, 888 P.2d 155 (1995).[8] Double jeopardy involves questions of law that are reviewed de novo. *State v. Womac*, 160 Wn.2d 643, 649, 160 P.3d 40 (2007). "'The double jeopardy doctrine protects a criminal defendant from being (1) prosecuted a second time for the same offense after acquittal, (2) prosecuted a second time for the same offense after conviction, and (3) punished multiple times for the same offense.'" *State v. Fuller*, 185 Wn.2d 30, 33-34, 367 P.3d 1057 (2016) (quoting *State v. Linton*, 156 Wn.2d 777, 783, 132 P.3d 127 (2006)). In this case, we are dealing with the third prong. "The Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units." *Brown v. Ohio*, 432 U.S. 161, 169, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977).

---

[6] "'Same criminal conduct'" means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim. Former RCW 9.94A.589(1)(a) (2002).

[7] Although the trial court found the offenses encompassed the same criminal conduct, the multiple punishments in this case result from the failure to vacate the lesser offense conviction. *State v. Albarran*, 187 Wn.2d 15, 22, 383 P.3d 1037 (2016); *State v. Womac*, 160 Wn.2d 643, 647, 160 P.3d 40 (2007).

[8] At least one commentator submits that "[a] number of decisions signal that double jeopardy protection does not extend to multiple punishments imposed in a single proceeding." Anne B. Poulin, Article: *Double Jeopardy and Multiple Punishment: Cutting the Gordian Knot*, 77 U. Colo. L. Rev. 595, 611 (2006). But Poulin recognizes this axiom remains the law even though it rests on a shaky foundation. 77 U. Colo. L. Rev. at 613.

"But the question whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple cannot be resolved without determining what punishments the Legislative Branch has authorized." *Whalen v. United States*, 445 U.S. 684, 688, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980). Courts often look to legislative intent to decide the constitutional issue of whether the legislature intended multiple convictions that arise from the same act can be punished separately. *Calle* 125 Wn.2d at 777. In so doing, they often rely on the rule of statutory construction outlined in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932), to make this determination. The "issue is one of legislative intent rather than constitutional limitation. . . . The only question is whether the punishment exceeds that intended by the legislature." 77 U. Colo. L. Rev. at 597 (footnotes omitted).

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Blockburger*, 284 U.S. at 304. Legislative intent is often not explicitly stated, and the courts must glean the intent using rules of statutory construction.

The rule has been repeated often. "A 'defendant's double jeopardy rights are violated if he or she is convicted of offenses that are identical both in fact and in law.'" *State v. Fuentes*, 179 Wn.2d 808, 824, 318 P.3d 257 (2014) (quoting *Calle*, 125 Wn.2d at 777). If, however, each charged offense includes elements not included in the other, then the offenses are different and there is no double jeopardy violation. *Fuentes*, 179 Wn.2d at 824; *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 816, 100 P.3d 291 (2004); *State v. Vladovic,* 99 Wn.2d 413, 423, 662 P.2d 853 (1983).

Although this test is often enunciated, our jurisprudence recognizes cases involving a violation of a defendant's double jeopardy rights notwithstanding the fact that the elements in the charged offenses were not identical. *Womac*, 160 Wn.2d at 652. As an example, in *State v. Hughes*, 166 Wn.2d 675, 683-84, 212 P.3d 558 (2009), the court held that the defendant's convictions for both rape of a child in the second degree and rape in the second degree violated double jeopardy even though they did not pass the same elements analysis. Both convictions arose from the same act. The court recognized that although the elements of the crimes differed, both required proof of nonconsent. It did not matter if the nonconsent was proved by the age of the victim or by the incapacity of the victim.

Similarly, in *State v. Schwab*, 98 Wn. App. 179, 189, 988 P.2d 1045 (1999), the court held that although felony murder in the second degree and manslaughter in the first degree were not the same in law, the convictions for both could not stand without violating double jeopardy. It vacated the manslaughter conviction.[9]

In *State v. Potter*, 31 Wn. App. 883, 884, 645 P.2d 60 (1982), the court held a violation of double jeopardy occurred where the defendant was convicted and sentenced on both reckless endangerment and reckless driving. In so ruling, the court wisely stated,

> We have compared the statutory elements of reckless driving and reckless endangerment utilizing the *Blockburger* test. In doing so, we note that reckless endangerment has a general conduct element while reckless driving can arise only out of the operation of a vehicle. If we compare these two elements without reference to what actually occurred, it is apparent that reckless endangerment can be committed without committing reckless driving. If, however, the statutory elements are compared in light of what did in fact occur, we observe that proof of reckless endangerment through use of an automobile will always establish reckless

---

[9] After a reversal on the felony murder charge, the manslaughter charge was reinstated. *Schwab*, 163 Wn.2d at 668.

26

> driving. We have reservations concerning the efficacy of the *Blockburger* test when the result turns on such subtle distinctions.

*Potter*, 31 Wn. App. at 887-88. The same is also true for assault and robbery. *State v. Freeman*, 153 Wn.2d 765, 774, 108 P.3d 753 (2005). We often look to see if each crime had an independent purpose or effect. *Freeman*, 153 Wn.2d at 773, 780. In Wilkins's case, the trial court found that he had the same intent in committing both the rape and the molestation crimes. In this case, there is no dispute that the molestation was incidental to and had no independent purpose from the rape. The undisputed evidence is that it occurred a moment in time before the rape.

Although we often rely on *Blockburger*'s rule of statutory construction to make determinations of legislative intent, it is not the exclusive means. *Calle*, 125 Wn.2d at 779. "The legislature's intent to preclude multiple punishments for the crimes of rape and rape of a child arising out of one act of sexual intercourse is confirmed by considering other indicia of legislative intent." *Hughes*, 166 Wn.2d at 684.

> The Double Jeopardy Clause does not limit legislative authority to define punishment. In the case of related convictions, a legislature can fix the sentence or sentencing range, provided only that it falls within the broad range permitted by the constitutional prohibition on cruel and unusual punishment and the due process requirement of fundamental fairness. Therefore, in evaluating a defendant's multiple punishment claim, the focus is legitimately, inevitably, and almost exclusively on legislative intent. The only question is whether the punishment exceeds that intended by the legislature.

77 U. Colo. L. Rev. at 597 (footnotes omitted).

Based on the principles enunciated above, we must look at the penal statutes Wilkins violated, at the facts presented, and at the applicable sentencing statutes.

An individual is guilty of rape of a child in the first degree "when the person has sexual intercourse with another who is less than twelve years old and not married to the perpetrator and

27

the perpetrator is at least twenty-four months older than the victim." RCW 9A.44.073(1). An individual is guilty of child molestation in the first degree "when the person has, or knowingly causes another person under the age of eighteen to have, sexual contact with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.083(1). "'Sexual contact'" is "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party." RCW 9A.44.010(2).

Here, the sentencing court found both offenses involved the same criminal conduct. As stated previously, "'same criminal conduct'" means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim. Former RCW 9.94A.589(1)(a).

Interestingly, in *State v. Chenoweth*, 185 Wn.2d 218, 224, 370 P.3d 6 (2016), the court held that the defendant's convictions for rape of a child in the third degree and incest did not involve the same criminal conduct. In so holding, it discussed the relationship between double jeopardy and same criminal conduct.[10]

> The two analyses are similar. Under double jeopardy analysis, we determine whether one act can constitute two convictions. Under the same criminal conduct analysis, we determine whether two convictions warrant separate punishments. Even though they may be separate, albeit similar, analyses, a determination that a conviction does not violate double jeopardy does not automatically mean that it is not the same criminal conduct.[11]

---

[10] The majority misconstrues my analysis on this issue. The concepts of double jeopardy and same criminal conduct are inextricably interwoven in this case and others.

[11] Not all convictions that involve the same criminal conduct will violate double jeopardy. However, I need not address those situations. I am addressing only the facts of this case.

*Chenoweth*, 185 Wn.2d at 222.

*Chenoweth* did not involve a case where, as here, the two convictions encompassed the same criminal conduct. Therefore, we must address if a double jeopardy violation exists.

Unlike *Chenoweth*, Wilkins's case involves an undisputed finding by the trial court and a concession by the State that his convictions encompassed the same criminal conduct. They involved the same act, the same intent, the same victim, and the same temporal period.[12] In such circumstance, our legislature's intent is to preclude multiple punishments for crimes arising out of one act of sexual intercourse. *Hughes*, 166 Wn.2d at 684. Moreover, our Supreme Court has held that in these situations failure to vacate such convictions violates double jeopardy principles even if the defendant is not sentenced on those convictions. *Womac*, 160 Wn.2d at 647. The proper remedy for a double jeopardy violation is vacation of the conviction for the lesser offense. *State v. Albarran*, 187 Wn.2d 15, 22, 283 P.3d 1037 (2016). Vacating the lesser offense will not affect the length of Wilkins's sentence or change any of the conditions that attach to it.

Because the sentencing court found that Wilkins's two crimes arose from the same act, involved the same victim, and occurred at the same time with the same criminal intent, being convicted of both offenses does not comport with legislative intent and violates Wilkins's double jeopardy right to not receive multiple punishments for the same offense.[13] The molestation had no

---

[12] I recognize the majority relies heavily on *State v. Land*, 172 Wn. App. 593, 295 P.3d 782 (2013), to decide that Wilkins's convictions do not violate double jeopardy. However, the language relied on by the majority is clearly dicta. It is a statement made by the court in *Land* that was not necessary for the decision and was not based on that case's facts.

[13] Under other factual scenarios, convictions for both of these crimes would not violate double jeopardy; however, those other factual scenarios are not before us. We are solely determining whether Wilkins's double jeopardy rights were violated.

independent purpose and was incidental to the rape.  I would, therefore, remand for vacation of the molestation conviction.

_____
MELNICK, J.